Filed 5/18/15  Maravilla Center v. First-Citizens Bank & Trust Co. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| MARAVILLA CENTER. LLC, et al., | D067427 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. RIC541994) |
| FIRST-CITIZENS BANK & TRUST COMPANY, | |
| Defendant, Cross-complainant and Respondent; | |
| VALLEY CIRCLE ESTATES REALTY CO. et al., | |
| Plaintiffs, Cross-defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Riverside County, Daniel A. Ottolia and Gloria Connor Trask, Judges.  Reversed and remanded with directions.

Garcia & Reed and Raul G. Garcia for Plaintiffs, Cross-defendants and Appellants.

Call & Jensen, Wayne W. Call and Todd C. Bouton for Defendant, Cross-complainant and Respondent.

Plaintiff Maravilla Center, LLC (Maravilla), and plaintiffs and cross-defendants Valley Circle Estates Realty Co., Rezinate Construction Corp. and Robert Z.[1] (together, Appellants) appeal from a final judgment dismissing their third amended complaint and awarding damages, costs and attorney fees to defendant and cross-complainant First-Citizens Bank & Trust Company (First-Citizens) on its cross-complaint. The only issue on appeal is whether the trial court erred in denying Robert's ex parte application to continue the trial date. We reverse and remand with directions.

---

[1] This appeal includes the review of an order following a request for an accommodation of a disability under California Rules of Court, rule 1.100. (Further undesignated rule references are to the California Rules of Court.) Subdivisions (c)(4) and (g)(3) of rule 1.100 require a court to "keep confidential all information of the applicant concerning the request for accommodation" (*id*., subd. (c)(4)). Accordingly, we have identified the individual appellant as "Robert Z." (Robert) and intend no disrespect by this informality.

2

I.

FACTUAL AND PROCEDURAL BACKGROUND[2]

Appellants and Rezinate San Jacinto, LLC (Rezinate), filed the underlying action in December 2009.[3] In June 2010, First-Citizens filed a cross-complaint against Valley Circle Estates Realty Co., Rezinate Construction Corp, Rezinate and Robert. Although Appellants have not provided us with a copy of the operative complaint or a cross-complaint — and thus we do not know the claims or causes of action that went to trial — from the register of actions and the judgment we understand that at the time of trial the operative pleadings were Appellants' third amended complaint and First-Citizens' cross-complaint.

In April 2010, the court granted Appellants' (and Rezinate's) motion for a preliminary injunction, restraining First-Citizens from conducting a nonjudicial foreclosure of approximately 2.5 acres of specifically identified real property in San

---

[2] Appellants' briefs lack many record references and in places contain inaccurate record references — all in violation of rule 8.204(a)(1)(C). Instead of returning or striking the briefs (rule 8.204(e)(2)), we have disregarded all such unsupported assertions that either side has presented in the briefing (*McOwen v. Grossman* (2007) 153 Cal.App.4th 937, 947 ["Statements of fact that are not supported by references to the record are disregarded by the reviewing court."]). This includes Appellants' statements supported by references to exhibits in the mandate proceedings *Robert Z. v. Superior Court*, No. E059358 (*Robert Z.*), that are not included in the record in *this* appeal.

[3] On the morning of the first day of trial, Rezinate filed bankruptcy. At First-Citizen's request and over Appellants' objections, the court severed Rezinate, and the matter proceeded to trial with the remaining parties. Although Rezinate is not a party in this appeal, it was a party in the trial court until August 14, 2013, and participated in all of the proceedings in which the nonindividual Appellants participated. There are no issues on appeal related to Rezinate or the severance.

Jacinto (Property). At the time, the operative complaint was a first amended complaint, alleging causes of action for specific performance, breach of contract, intentional interference with prospective business opportunity, declaratory relief and injunctive relief. In this since-superseded pleading, Appellants alleged the following facts: Maravilla acquired the Property in January 2006 and then began to develop it into a 30,000-square-foot commercial, retail and office center; to this end, in June 2007, Appellants and Rezinate entered into a series of agreements with Temecula Valley Bank (TVB) that resulted in a TVB loan of approximately $6.5 million; in the fall of 2008, by which time TVB had advanced approximately $2.5 million of the loan, certain of Appellants and Rezinate entered into an agreement with TVB, pursuant to which Maravilla would be allowed to pay off the loan with a release of all guarantors in exchange for a payment of approximately $820,000 by October 1, 2009; in mid-July 2009, the FDIC closed TVB, and First-Citizens took over its operations; in August 2009, Maravilla obtained a loan commitment sufficient to make the $820,000 payment, but First-Citizens refused to perform under the fall 2008 agreement with TVB.

As relevant to the issues on appeal, the register of actions indicates that in December 2011 the court set an initial trial date of June 15, 2012, two and a half years after the filing of the complaint. Between April 2012 and the August 2013 trial, Robert (and on occasion all Appellants and Rezinate) filed nine ex parte applications to continue the trial date, four of which were granted and five of which were denied, as we will explain in greater detail.

A.      *April 16, 2012 – August 8, 2013:  Robert Files Nine Ex Parte Applications in an Effort to Continue the Trial*

First application – granted.  By ex parte application filed April 16, 2012, Robert[4] asked that the court continue for 120 days the pending dates for the hearing on First-Citizens' motion for summary adjudication, the mandatory settlement conference and trial.  As evidentiary support, Robert included his declaration and the declarations of Jeffrey S. Goodman, M.D., and Thomas J. Ence, M.D., two of Robert's doctors.  The evidence suggested a cardiac condition and a scheduled procedure such that Robert could not prepare for trial — which was crucial not only for him, but also for the entities, since according to Robert he was the only person with sufficient knowledge to assist corporate counsel.  First-Citizens opposed the application, arguing essentially that this application was a continuation of Appellants' litigation tactic to delay resolution of the lawsuit.  On April 16, 2012, the court granted the application, continuing the dates; the new trial date was more than six months later on January 11, 2013.[5]

Second application – granted.  By ex parte application filed October 17, 2012, Appellants asked that the court continue for 45-60 days the pending dates for the hearing

_____

4      Unless indicated otherwise, Robert did not have counsel of record.

5      The court warned Robert both that the new date was firm and that, if his health did not improve, he needed to use the assistance of an attorney:  "And it's going to go on the record.  This is a firm date.  It's a firm date.  I have this expectation.  In case I'm not here on the bench in January of 2013 when this matter is called to trial, I have the expectation this case is going to go forward to trial.  [¶]  If [Robert] continues to have health issues, he needs to get Mr. [Paul] Stanton[, counsel of record for the entity Appellants,] on board insofar as representing his interests individually in this matter.  So that's why I use that word, 'firm[.]' "

on First-Citizens' motion for summary adjudication, the mandatory settlement conference and trial.  In addition, Appellants asked that the court stay all discovery and extend all pending discovery deadlines until December 30, 2012.  As evidentiary support, Robert included his declaration and the declarations of Stanton (counsel of record for the entity Appellants) and A. James Khodabakhsh, M.D., one of Stanton's doctors.  The evidence suggested that Robert continued to suffer from the cardiac condition (including recovery from open-heart surgery) and that Stanton had cataracts and needed surgery on both eyes.  Stanton testified as to the prejudice Appellants would suffer without the extensions of time and discovery stay, and Robert testified as to his reliance on Stanton's expertise in drafting pleadings.  First-Citizens opposed the application, arguing that the litigation had been pending almost three years and that the balancing of the factors under rule 3.1332(d) favored First-Citizens; it also urged the court not to stay discovery or to extend discovery deadlines.   First-Citizens quoted from the minute order and transcript of the hearing on Robert's first application, where the court warned the parties that the new January 2013 date was " 'a firm date.' "  (See fn. 5, *ante*.)  On October 17, 2012, the court granted the application, continuing the dates; the new trial date was more than five months later (one and a half months later than previously scheduled) on March 1, 2013.  (All further dates are in 2013, unless indicated otherwise.)

Third application – granted.  By ex parte application filed January 4, Robert asked that the court extend all pending discovery deadlines for Appellants, reopen discovery for Appellants, continue the pending date for the hearing on First-Citizens' motion for summary adjudication, and continue for 90 days the mandatory settlement conference and

6

trial. Robert's application indicated that the evidence in support of the application was included in his accompanying declaration and the accompanying declarations of Stanton and Ali Khoynezhad, M.D., another of Robert's doctors, but the record on appeal does not contain the declarations. In support of the application, Robert again argued that the ongoing condition of his health — in particular, low blood pressure — necessitated the additional time and that he alone knew the facts of the case. First-Citizens opposed the application, repeating most of its previous arguments and emphasizing Appellants' pattern of delay and missed deadlines combined with Robert's physical ability to participate in some litigation responsibilities. On January 8, the court granted the application, continuing the dates; the new trial date was more than four months later (one and a half months later than previously scheduled) on May 17.

Fourth application – denied. By ex parte application filed March 13, Robert asked that the court extend all pending discovery deadlines for Appellants until mid-May, continue the pending date for the hearing on First-Citizens' motion for summary adjudication for 90 days until mid-June, and continue the mandatory settlement conference and trial for 90 days until mid-August. As evidentiary support, Robert included his declaration, his amended declaration and the declaration of Khoynezhad. Robert again argued that the ongoing condition of his health — again, low blood pressure — necessitated the additional time. First-Citizens opposed the application, repeating most of its previous arguments, again emphasizing Appellants' pattern of delay and missed deadlines combined with Robert's physical ability to participate in some litigation responsibilities. On March 14, the court denied Robert's application, which left May 17

7

as the date for trial.  At the hearing, the court found that the declarations did not establish the requisite good cause for the continuance of the trial and reminded Robert of the court's prior admonitions to get an attorney to represent him in the action, especially if his health was failing.[6]

Fifth application – granted.  By ex parte application filed March 15, Robert (supposedly on behalf of all plaintiffs) asked that the court continue the trial for at least 60 days, until after July 17.  As evidentiary support, Robert included a declaration from Raul B. Garcia, an attorney, and a request that the court also consider the evidence of Robert's medical condition from the fourth application filed (and denied) two days earlier.  Robert had signed a form substituting Garcia as his (Robert's) attorney of record, and Garcia testified that the remaining Appellants (and Rezinate) would sign similar forms but only if the trial was continued at least 60 days.[7]  First-Citizens opposed the application, repeating all of its previous arguments and adding that Robert had previously been told to get counsel, but only did so once the court denied a trial continuance.  On March 18, the court granted Robert's application, continuing the trial until August 9[8] —

---

[6]     The court also reminded everyone that the business entities (i.e., the nonindividual Appellants and Rezinate) could only appear through counsel.

[7]     Garcia had signed Robert's application and points and authorities, even though he was not of record.

[8]     The court also filed forms substituting Garcia as counsel for each of the Appellants, declined to reopen discovery, allowed Appellants and their new counsel until April 11 to designate experts and ordered that Robert appear for his deposition no later than April 15.

acknowledging "that this may be a ploy by [Robert] and that he may fire [Garcia's] office before we get to the trial date and try [to get a further continuance] again."

Sixth application – denied. Within two months of the court's expressed concerns that (1) the business entities could only appear through counsel, and (2) Robert would fire Garcia, on May 14 all Appellants (including the business entities) filed forms substituting Robert in place of Garcia. Another two months later, by ex parte application filed July 17 — less than a month before the scheduled trial date of August 9 — Robert asked that the court continue the trial for 90-120 days.[9] Robert's notice to First-Citizens, Robert's application and Robert's points and authorities were signed by Michael Creamer, an attorney; and he listed himself on the application as "Limited Scope Counsel for [Robert] Who Is In Pro Per." Creamer never attempted to substitute in as counsel for any party, testifying only that he would not be trial counsel and "ha[d] not been retained to provide any legal services beyond assisting [Robert] with the deposition issues and this application to continue trial." As evidentiary support for the application, Robert included declarations from Creamer and John L. Sherman, M.D. Robert argued that he needed the additional time for two reasons: (1) to retain counsel "to prepare his case for trial";[10] and (2) to attend to his health — which, according to Sherman, was an abnormal protrusion from Robert's abdomen for which Sherman recommended a consultation with a surgeon.

---

9    The application asked for 90 days, whereas the notice and the points and authorities asked for 120 days.

10    We note that Robert did not argue that he needed counsel *to try the case*, only *to prepare the case for trial*.

First-Citizens opposed Robert's application, filing its own ex parte application in which it requested (1) a prompt ruling on Robert's application, given the preparation necessary for a trial that was scheduled to commence in less than a month, and (2) certain discovery-related relief depending on whether the court granted or denied Robert's application. On July 17, the court denied both ex parte applications, leaving in place the August 9 trial date. In particular, the court found that Robert did not meet his burden of establishing good cause, since Sherman's declaration did not establish if, let alone when, there might be a surgery.[11]

Seventh application – denied. Two weeks later, just nine days before trial, by ex parte application filed July 31 Robert asked that the court continue the trial — and all related dates, including discovery cutoff — for 90 days.[12] As evidentiary support for the application, Robert included his declaration and the declarations of Creamer, Leonel A. Hunt, M.D. (one of the spinal orthopedic surgeon who had operated on Robert on May 8), and Alan D. Engelberg, M.D. (Robert's primary care physician). Robert argued that he needed the additional time in order to undergo and recover from a necessary

---

[11]    At the hearing, the court also (1) questioned Creamer as to what he described as his "limited scope appearance"; (2) ruled that the business entities (Appellants other than Robert) were not parties to the ex parte proceedings, because they were not represented by counsel; and (3) found that Robert's general state of health no longer justified further trial continuances, given his "unwillingness to let an attorney really represent him in this case" after repeated warnings.

[12]    Despite the court's comments at the July 17 hearing, Robert again submitted an application and points and authorities signed only by Creamer, as "Special Appearance Counsel."

surgery — one that had not yet been scheduled by a doctor or authorized by Robert's health insurer. First-Citizens opposed Robert's application on the same grounds as before, stressing that if a continuance is granted it be conditioned on Robert completing his deposition at least 40 days prior to trial and otherwise not reopening discovery. On August 1, the court ruled: (1) Creamer could not appear, since he was not of record;[13] (2) Robert's declaration was inadmissible because it was not made under penalty of perjury; and (3) Engelberg's declaration was inadmissible because it was undated. The court then denied Robert's application based on a lack of good cause, explaining what facts it looked for when a party's poor health was the basis of a requested trial continuance. This ruling left in place the August 9 trial date.

Eighth application – denied. Four days later, by ex parte application filed August 5 (to be heard Aug. 6, just three days before trial), Robert again asked that the court continue the trial — and all related dates, including discovery cutoff — for 90 days.[14] As evidentiary support for the application, Robert submitted his declaration and declarations from Creamer, Garcia, Engelberg, Hunt and David Fermelia, M.D.[15] This application mirrored the sixth and seventh applications (heard July 17 and Aug. 1,

_____

[13] The court explained: "Mr. Creamer, I don't acknowledge or recognize special appearances. I have no idea what a limited appearance attorney is."

[14] Creamer, who still was not counsel of record, signed Robert's "In Pro Per" application and points and authorities.

[15] The declarations from Robert and Engelberg were the same as those submitted in support of the seventh application with attempts to cure the earlier procedural irregularities.

11

respectively) with an effort to provide additional evidence. This time, in arguing that he needed the additional time, Robert attempted to "clarif[y] . . . what medical treatment and the reconstructive abdominal surgery that is needed" and to establish that once he was able he "will retain trial counsel for all [Appellants and Rezinate]." First-Citizens opposed Robert's application on the same grounds as before, again requesting that if a continuance is granted it be conditioned on Robert completing his deposition at least 40 days prior to trial and otherwise not reopening discovery. On August 6, the court denied Robert's application and confirmed the trial date three days later on August 9.[16]

Ninth application – denied. The next day, August 7, Robert filed an ex parte application (to be heard one day before trial, August 8),[17] again requesting a continuance of the trial and all related dates for 90 days. Although Robert was still self-represented, that same day Garcia substituted in as counsel of record for the entity Appellants. As evidentiary support for the application, Robert submitted his declaration, a declaration

---

[16]     Garcia appeared at the hearing, but since he had not substituted in as counsel, the court would not allow him to argue. Of note, Garcia's declaration did not support what Robert had presented in his application with regard to retention of counsel. Robert had not retained counsel for anyone; Garcia testified only that he "ha[d] recently had discussions with [Robert] about substituting into this action on behalf of [Appellants and Rezinate]," but that he could not commit given "the current trial date and [Robert's] extreme limitations." The following day (August 7), however, Garcia did substitute in as counsel for entity Appellants — but not for Robert.

[17]     In multiple places in their opening brief, Appellants state (without a record reference) that Robert presented the ninth application more than five court days before trial. However, at the time Robert's application "to continue the trial date" was filed (August 7) and heard (August 8), the trial was scheduled to commence merely two days later on August 9.

12

from Creamer and copies of the declarations from Engelberg, Hunt and Fermilia that Robert submitted in support of his eighth application, which was denied on August 6. This application was almost identical to the prior eight applications — with one significant addition:  whereas all nine health-related requests to continue the trial were based on rule 3.1332(c)(2), the ninth application was *also* based on rule 1.100.[18]  First-Citizens opposed Robert's application on the same grounds as before, emphasizing that this was Robert's fourth attempt in three weeks to continue the trial that was scheduled to begin the next day; First-Citizens did not mention rule 1.100.  On August 8, after hearing briefly from Robert (who personally participated via Court Call), the court denied his application and confirmed the August 9 trial date (August 8 Order).  Garcia appeared on behalf of the entity Appellants, and he requested — and the court denied — his oral request for a stay in order to allow time to file a writ petition.

---

[18]    Rule 3.1332 is entitled "Motion or application for continuance of trial" and provides the procedural and substantive grounds for continuing a trial date.  Robert relied on the "unavailability of a party because of death, illness, or other excusable circumstances" as the "good cause" to continue the trial.  (Rule 3.1332(c)(2).)

Rule 1.100 is entitled "Requests for accommodation by persons with disabilities" and provides the procedural and substantive bases for requesting an accommodation, responding to such requests and seeking review of rulings on such requests in order to ensure that persons with disabilities have access to the courts.  We have assumed without deciding that, for purposes of this rule, Robert is a " '[p]erson[] with disabilities' "; and we know from *Vesco v. Superior Court* (2013) 221 Cal.App.4th 275, 279 (*Vesco*), that a trial continuance is an authorized " '[a]ccommodation[].' "  (Rule 1.100(a)(1), (3); see fn. 27, *post*.)

B.	*August 9, 2013 – August 12, 2013: Maravilla Files a Peremptory Challenge, Robert Files a Writ Petition and Rezinate Files a Bankruptcy Petition in an Effort to Continue the Trial*

On the morning of the first day of trial on August 9, Garcia substituted in as counsel for Robert. After an unsuccessful attempt at mediation, the parties were assigned to Judge Riemer's courtroom for trial, whereupon Maravilla filed a peremptory challenge to Judge Riemer which was granted. (Code Civ. Proc., § 170.6.) From what we can tell from the register of actions, the parties were told to return on August 12, at which time they were assigned to Judge Ottolia's courtroom.

Meanwhile, earlier in the morning on August 12, Appellants and Rezinate (all represented by Creamer) had filed a petition for writ of mandate in the Court of Appeal seeking an emergency stay of the trial court proceedings and a 90-day continuance of the trial date and all related dates.[19] Once advised of the writ petition, in a chambers conference, Judge Ottolia delayed the start of trial until the appellate court ruled.

Also during the chambers conference, for the first time Garcia informed the court and First-Citizens that earlier that same morning, Rezinate had filed for bankruptcy — in a chapter 7 petition signed by Robert, as Rezinate's managing member. Appellants and

_____

[19]	This is the *Robert Z.* matter we introduced at footnote 2, *ante*. On our own motion, we have taken judicial notice of the writ petition in *Robert Z.* (Evid. Code, §§ 452, subd. (d)(1), 459; see *In re Kenneth M*. (2004) 123 Cal.App.4th 16, 18 fn. 2.)

14

Rezinate then filed a notice, asserting that the automatic stay in Rezinate's bankruptcy case stayed the entire action as to all parties and claims.[20]

Later in the day on August 12, the Court of Appeal denied the writ petition.

C.  *August 14, 2013:  The Case Is Tried*

When the parties returned for trial on August 14, First-Citizens presented — and the court granted — a motion to sever Rezinate and proceed to trial with the others.[21]

In discussing the next issues raised by First-Citizens' pleadings, Garcia represented to the court:

> "Your Honor, if I may short-circuit this?  [¶]  *My instructions, Your Honor, were to come to court and tell the court that plaintiff is* [*sic*] *not ready to proceed, that we have no witnesses to call*.  [Robert] will not be here.  We have no documents to introduce.  Because of the time lapse [during which I was not representing any of the Appellants], I'm not even prepared to sit here in court and cross-examine witnesses on the presentation of their case. *So my instructions were to simply make the record that* [*Robert*] *has not been able to participate*.  He's had these surgeries . . . and now is waiting for health insurance approval to have additional surgery, which could be any day, and that *we are not prepared to proceed either affirmatively or in defense of* [*First-Citizens' cross-complaint*].
>
> "So once we get to that stage where the court is going to say, 'Mr. Garcia, are you ready to call your first witness,' I'm going to say 'no.'
>
> " 'Do you have any evidence?'  I'm going to say 'no.'

---

[20]  The Judicial Council form they used, signed by Garcia, did not contain the required attachment showing that a bankruptcy case actually had been filed.  In any event, the automatic stay from Rezinate's alleged bankruptcy filing affected at most the cross-complaint, asserted *against the debtor*, not the third amended complaint, asserted *by the debtor*.  (*Shah v. Glendale Federal Bank* (1996) 44 Cal.App.4th 1371, 1375.)

[21]  The court also ruled on a number of other pretrial motions filed by First-Citizens, none of which affect the issues raised by Appellants in this appeal.

15

"*Then on the presentation of their case in chief on their cross-complaint, I have been instructed I do not need to remain for that portion of the trial*, because I don't know anything anymore [*sic*]." (Italics added.)

After indicating its intention to "proceed like a prove-up," First-Citizens moved to proceed under Code of Civil Procedure section 594.[22] After hearing from counsel for both sides, the court granted First-Citizens' motion and at Garcia's request excused Garcia from participating further. First-Citizens then presented its evidence, which consisted of testimony from a bank officer and seven exhibits, after which the court entered judgment as requested by First-Citizens: the third amended complaint was dismissed; the preliminary injunction issued in April 2010 was dissolved; First-Citizens was awarded $4,024,960.56 against Valley Circle Estates Realty Co. and Robert jointly and severally, along with costs and attorney fees to be determined; postjudgment interest was to accrue at the legal rate; and First-Citizens would apply as a payment on the judgment the net funds received from any nonjudicial foreclosure of the Property.

In posttrial proceedings, the court determined that First-Citizens was entitled to $1,157,717.35 in attorney fees and costs against all Appellants jointly and severally and filed an amended judgment containing the original rulings and this additional award.

Appellants timely appealed.

---

[22] "In superior courts either party may bring an issue to trial or to a hearing, and, in the absence of the adverse party, unless the court, for good cause, otherwise directs, may proceed with the case and take a dismissal of the action, or a verdict, or judgment, as the case may require . . . ." (Code Civ. Proc., § 594, subd. (a).)

II.

DISCUSSION

On appeal, Appellants contend the trial court erred in failing to continue the trial on two independent grounds: (1) the court abused its discretion under rule 3.1332(c)(2) based on the evidence of Robert's health; and (2) the court failed to comply with rule 1.100's requirement that courts must accommodate an individual with a disability. We disagree with the first ground, but agree in part with the second.

A.    *The Court Did Not Abuse Its Discretion in Denying the Continuance*

Robert argues that the trial court erred in denying his fourth, sixth, seventh, eighth and ninth ex parte applications to continue the trial (and related dates).[23]  We disagree.

1.    *Standard of Review*

We review for an abuse of discretion a trial court's order denying a request to continue a trial.  (*Thurman v. Bayshore Transit Management, Inc.* (2012) 203 Cal.App.4th 1112, 1126.)  " 'The trial court's exercise of that discretion will be upheld if it is based on a reasoned judgment and complies with legal principles and policies appropriate to the case before the court.  [Citation.]  A reviewing court may not disturb the exercise of discretion by a trial court in the absence of a clear abuse thereof appearing

---

[23]    Actually, Appellants assert that the court erred in denying the *fifth*, sixth, seventh, eighth and ninth applications.  We assume Appellants meant *fourth*, not fifth, since the court denied the fourth application and granted the fifth.  In any event, we fail to see how Appellants were prejudiced by the denial of the *fourth* application, since the court granted the *fifth* application, continuing the trial 84 days from May 17 until August 9.  Because Appellants necessarily were not prejudiced by the denial of Robert's *fourth* application, we will focus on only the sixth through the ninth applications.

in the record.' " (*Ibid.*; see *Avant! Corp. v. Superior Court* (2000) 79 Cal.App.4th 876, 881-882 ["if the trial court's conclusion was a reasonable exercise of its discretion, we are not free to substitute our discretion for that of the trial court"].)

The appellant has the burden of establishing an abuse of discretion, keeping in mind that the trial court's judgment is " 'presumed correct.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564, 566 (*Denham*).) An appellant does not meet its burden by arguing merely that a different ruling would have been better or more equitable. Rather, a trial court abuses its discretion only if, based on the applicable law and considering all of the relevant circumstances, the decision " 'exceeds the bounds of reason.' " (*Id.* at p. 566.) We must affirm so long as the record contains "sufficient evidence for us to conclude that the action of the trial court was within the permissible range of options set by the legal criteria." (*Dorman v. DWLC Corp.* (1995) 35 Cal.App.4th 1808, 1815 (*Dorman*); see *Quantum Cooking Concepts, Inc. v. LV Associates, Inc.* (2011) 197 Cal.App.4th 927, 932 [no abuse of discretion where the ruling " ' "falls within the permissible range of options set by the legal criteria" ' "].)

In determining the sufficiency of the evidence, as an appellate court we "may not weigh the evidence or consider the credibility of witnesses. Instead, the evidence most favorable to [the respondent] must be accepted as true and conflicting evidence must be disregarded[,] . . . 'indulging every legitimate inference which may be drawn from the evidence in [the respondent's] favor . . . .' " (*Campbell v. General Motors Corp.* (1982) 32 Cal.3d 112, 118.) Even uncontradicted evidence in favor of an appellant does not establish the fact for which the evidence was submitted. (*Foreman & Clark Corp. v.*

*Fallon* (1971) 3 Cal.3d 875, 890 (*Foreman*).) The issue is not whether there is evidence in the record to support a different finding, but whether there is evidence that, if believed, would support the trial court's finding. (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 872-873.)

2.      *Appellants Did Not Meet Their Burden of Establishing an Abuse of Discretion*

Rule 3.1332(a) provides that "the dates assigned for trial are firm," and rule 3.1332(c) provides that continuances are "disfavored" and may be granted "only on an affirmative showing of good cause."

The good cause on which Robert relied in the trial court was his unavailability due to poor health — one indication of good cause expressly recognized at subpart (2) of rule 3.1332(c). On appeal Appellants have focused only on this allegedly good cause, arguing that, because of the strong uncontradicted showing of Robert's unavailability due to poor health, the court was *required* to grant the requested continuances.[24] In so doing, Appellants have ignored rule 3.1332(d)'s mandate that in ruling on a request for a continuance "the court must consider *all the facts and circumstances* that are relevant to

_____

[24]      We reject Appellants' argument that, because the trial court had granted four applications for a continuance based on a sufficient showing of good cause, the " 'law of the case' " was that Robert had established good cause for additional continuances. First, the law of the case doctrine applies only to a principle or rule of law *in an appellate court opinion* that is necessary to the appellate court's decision (*Morohoshi v. Pacific Home* (2004) 34 Cal.4th 482, 491) — not to an implied finding of fact *by the trial court*. Further, accepting such an argument would lead to the absurd result that, once a party is granted one continuance based on a showing of good cause, then the party would be entitled to continuances indefinitely.

the determination," not just the showing of good cause under subdivision (c). (Italics added.) These other facts and circumstances may include:

"(1) The proximity of the trial date;

"(2) Whether there was any previous continuance, extension of time, or delay of trial due to any party;

"(3) The length of the continuance requested;

"(4) The availability of alternative means to address the problem that gave rise to the motion or application for a continuance;

"(5) The prejudice that parties or witnesses will suffer as a result of the continuance;

"(6) If the case is entitled to a preferential trial setting, the reasons for that status and whether the need for a continuance outweighs the need to avoid delay;

"(7) The court's calendar and the impact of granting a continuance on other pending trials;

"(8) Whether trial counsel is engaged in another trial;

"(9) Whether all parties have stipulated to a continuance;

"(10) Whether the interests of justice are best served by a continuance, by the trial of the matter, or by imposing conditions on the continuance; and

"(11) Any other fact or circumstance relevant to the fair determination of the motion or application." (Rule 3.1332(d).)

As we introduced *ante* — contrary to Appellants' presentation — we do not review the record to determine whether there is sufficient evidence to support the ruling Appellants wanted, but rather whether there is sufficient evidence to support the ruling actually made. (*Dorman*, *supra*, 35 Cal.App.4th at p. 1815; *Denham*, *supra*, 2 Cal.3d at p. 566.) Indeed, by failing to have presented and discussed the evidence *in favor of the court's ruling* and then to have argued why it is not substantial, Appellants have forfeited

20

their right to challenge the exercise of the court's discretion under rule 3.1332. (*Foreman*, *supra*, 3 Cal.3d at p. 881; *Huong Que, Inc. v. Luu* (2007) 150 Cal.App.4th 400, 410 [before appellate court considers substantiality of evidence, appellant must first present "a fair summary of the evidence bearing on the challenged finding, particularly including evidence that arguably *supports* it"].) Further, Appellants do not mention, let alone discuss, *any* of the rule 3.1332(d) factors.[25] Nonetheless, First-Citizens has cited evidence in the record that supports the trial court's denials of the requested continuances, and we will discuss it.

At the time Robert presented his sixth, seventh, eighth and ninth applications, the August 9 trial date was respectively 24 days, nine days, four days and two days away. The August 9 trial date was two years eight months after Appellants filed the action in December 2009 and included 420 days of continuances at Robert's request. In each of the last four requests, Robert sought another 90-day continuance.

The case was not entitled to a statutory preference. However, more than three years earlier, in April 2010 the court had entered a preliminary injunction restraining First-Citizens from conducting a nonjudicial foreclosure of the Property — i.e., the

---

[25]    We are not persuaded by the authorities Appellants cite. Appellants rely on case law regarding good cause for a trial continuance that predates rule 3.1332 and its predecessor rule by more than 80 years. (Compare *Jaffe v. Lilienthal* (1894) 101 Cal. 175 and *Morehouse v. Morehouse* (1902) 136 Cal. 332 with rule 3.1332, eff. Jan. 1, 2007, and former rule 375, adopted eff. Jan. 1, 1984.) Appellants also rely on Code of Civil Procedure section 594, which deals with the good cause necessary to preclude a case proceeding to trial "in the absence of the adverse party," not with the good cause necessary to continue a trial.

collateral for a loan that was in default — leaving First-Citizens with a defaulted loan and no way to attempt to satisfy its claim other than by trial.

None of the four continuances was by stipulation. To the contrary, First-Citizens filed written opposition with supporting evidence to Robert's final four (and, indeed, all nine of the) applications. Following the sixth application (at which a further continuance was denied), when trial was just three weeks away, First-Citizens had begun final trial preparations and was ready to proceed on a timely basis, despite Appellants' failure to comply with required pretrial procedures.

In sum, Appellants had over three and a half years in which to prepare for trial. Despite Robert's poor health, either by himself or with the assistance of counsel, he succeeded in obtaining a preliminary injunction restraining a foreclosure, followed by nine applications and four continuances of the trial for a total of 420 days. First-Citizens had prepared for trial a number of times and was ready to proceed on August 9. Because the evidence of these other "facts and circumstances" (rule 3.1332(d)) supports the exercise of the trial court's discretion in denying the requested continuances — regardless of the strength of the evidence of "good cause" in support of the requested continuances (rule 3.1332(c)) — Appellants did not meet their burden of establishing an abuse of discretion.

22

B.      *The Trial Court Failed to Comply with a Mandatory Provision in
        Rule 1.100(e)(2)(B)*

We take very seriously "the policy of the courts of this state," which is to "ensure that persons with disabilities have equal and full access to the judicial system."[26] (Rule 1.100(b); see *Biscaro v. Stern* (2010) 181 Cal.App.4th 702, 707 (*Biscaro*) ["The purpose of rule 1.100 is to allow meaningful involvement by all participants in a legal proceeding to the fullest extent practicable."].)  For purposes of this discussion, as we noted above, we have assumed without deciding that, for purposes of rule 1.100(a), Robert is a " '[p]erson[] with disabilities' "; and under *Vesco, supra,* 221 Cal.App.4th at p. 279, we know that a continuance of a trial date is among the " '[a]ccomodations' " provided for in cases like this one.[27]  (Rule 1.100(a)(1), (3).)

---

[26]     That said, we reject Appellants' unsupported rhetoric that "[t]he din of the policy to move cases to trial . . . prevented the court from accommodating the needs of a very disabled person, to his detriment."

[27]     "As used in this rule:  [¶]  (1) 'Persons with disabilities' means individuals covered by California Civil Code section 51 et seq.; the Americans With Disabilities Act of 1990 (42 U.S.C. § 12101 et seq.); or other applicable state and federal laws.  This definition includes persons who have a physical or mental impairment that limits one or more of the major life activities, have a record of such an impairment, or are regarded as having such an impairment.  [¶] . . . [¶]  (3) 'Accommodations' means actions that result in court services, programs, or activities being readily accessible to and usable by persons with disabilities.  Accommodations may include making reasonable modifications in policies, practices, and procedures; furnishing, at no charge, to persons with disabilities, auxiliary aids and services, equipment, devices, materials in alternative formats, readers, or certified interpreters for persons with hearing impairments; relocating services or programs to accessible facilities; or providing services at alternative sites.  Although not required where other actions are effective in providing access to court services, programs, or activities, alteration of existing facilities by the responsible entity may be an accommodation."  (Rule 1.100(a).)

Appellants argue that they are entitled to a reversal of the amended judgment, because the trial court failed to rule on Robert's request for accommodation in violation of rule 1.100(e). The record on appeal, however, does not support Appellants' premise; in the August 8 Order, the court expressly ruled on Robert's request by denying his ex parte application. Appellants expand their argument by contending that the court's failure to address the request for accommodation "was, in effect, . . . a denial of the review procedures set forth in Rule 1.100[(g)(2)]." The record does not support this argument either. Rule 1.100(g)(2) provides that, in response to a judicial officer's ruling on a rule 1.100 request for accommodation, "any participant in the proceeding may file a petition for writ of mandate under rules 8.485-8.493 . . . ." In fact, Appellants and Rezinate did just that: On August 12, they timely filed a petition for writ of mandate, initiating the *Robert Z.* writ proceeding discussed at footnotes 2 and 19, *ante*. In addition, Appellants are successfully obtaining review in this appeal.[28]

Alternatively, Appellants argue that the trial court erred by failing to provide a written response to Robert's request for accommodation, as required by rule 1.100(e), which is entitled "Response to accommodation request" and provides in full:

"The court *must* respond to a request for accommodation as follows:

---

[28]  First-Citizens argued both in its brief and at oral argument that, under rule 1.100(g)(2), the writ of mandate procedure was Appellants' *only* right to appellate review of the court's denial of Robert's request for accommodation. However, the rule provides that "an applicant or any participant in the proceeding *may* file a petition for writ of mandate"; the rule does not *require* appellate review by writ procedure only. (Rule 1.100(g)(2), italics added; compare, e.g., Code Civ. Proc., §§ 170.3, subd. (d) [disqualification of judge], 418.10, subd. (c) [lack of personal jurisdiction].)

"(1) In determining whether to grant an accommodation request or provide an appropriate alternative accommodation, the court must consider, but is not limited by, California Civil Code section 51 et seq., the provisions of the Americans With Disabilities Act of 1990 (42 U.S.C. § 12101, et seq.), and other applicable state and federal laws.

"(2) The court must promptly inform the applicant of the determination to grant or deny an accommodation request. *If the accommodation request is denied in whole or in part, the response must be in writing.* On request of the applicant, the court may also provide an additional response in an alternative format. The response to the applicant *must* indicate:

"(A)   Whether the request for accommodation is granted or denied, in whole or in part, or an alternative accommodation is granted;

"(B)   *If the request for accommodation is denied, in whole or in part, the reason therefor*;

"(C)   The nature of any accommodation to be provided;

"(D)   The duration of any accommodation to be provided; and

"(E)   If the response is in writing, the date the response was delivered in person or sent to the applicant." (Rule 1.100(e), italics added.)

Although the August 8 Order *does* contain a written response denying the application, Appellants are correct in their criticism that it *does not* include "the reason therefor" as required by rule 1.100(e)(2)(B). The written ruling provides in full: "Ex Parte Application is called for hearing[.] [¶] *Ex Parte Application is denied.* [¶] Hearing re Jury Trial on 08/09/13 at 8:30 confirmed[.] [¶] Notice does not need to be given of Ex Parte ruling." (Italics added.) Thus, in denying Robert's rule 1.100 request for accommodation under the Americans With Disabilities Act of 1990 (ADA), the court failed to comply with rule 1.100(e)(2)(B)'s requirement that the court's written response to Robert's request provide the reason for the denial.

The grounds for denying a rule 1.100 request are limited:

"A request for accommodation may be denied *only* when the court determines that:

"(1) The applicant has failed to satisfy the requirements of this rule;

"(2) The requested accommodation would create an undue financial or administrative burden on the court; or

"(3) The requested accommodation would fundamentally alter the nature of the service, program, or activity." (Rule 1.100(f), italics added.)

(See *In re Marriage of James & Christine C.* (2008) 158 Cal.App.4th 1261, 1265 (*James & Christine C.*) ["Rule 1.100(f) permits a trial court to deny a request for accommodation under the ADA only if the court makes a determination of at least one of three specifically identified grounds."]; *id.* at p. 1273 ["[t]he grounds for denying a request for accommodation are limited[,]" citing rule 1.100(f)]; *id.* at p. 1274 ["The trial court could deny the Second ADA Request only by making a determination of one of the three grounds listed in . . . rule 1.100(f)."]; *id.* at p. 1276 ["The trial court's control of the judicial process was circumscribed by rule 1.100[(f)], which limited the grounds on which the trial court could deny an ADA request."]; *id.* at p. 1277 ["In ruling on the Second ADA Request, the only determination to be made was whether any of the grounds listed in . . . rule 1.100(f) for denying the request was present."]; *Biscaro*, *supra*, 181 Cal.App.4th at p. 708 ["A court may deny a properly stated request for accommodation for only one of three reasons . . . ."].)

Acknowledging that Robert's request can only be denied under one of the three expressly listed grounds in rule 1.100(f), First-Citizens argues that we can nonetheless affirm the amended judgment (and impliedly the August 8 Order) under two theories that somewhat overlap. Both arguments are based on First-Citizens' contention that, because

Robert failed to file his request for accommodation "as far in advance as possible, *and in any event . . . no fewer than 5 court days before the requested implementation date*" and because Robert failed to "forward[ his request] to the ADA coordinator" within this same time frame, Robert did not comply with rule 1.100(c)(3) and (1), respectively.[29]  (Italics added.)  By failing to comply with rule 1.100(c), First-Citizens' presentation continues, Robert necessarily "failed to satisfy the requirements of this rule" (rule 1.100(f)), thereby establishing one of rule 1.100(f)'s three specifically identified grounds for denying a request for accommodation.[30]  From here, First-Citizens' two arguments are based on Robert's failure to comply with rule 1.100(c)'s requirements for requesting an accommodation:  (1) Robert's noncompliance excused the court from complying with rule 1.100(e)(2)(B)'s requirement for a written statement of the reason for the denial; and (2) because Robert actually did fail to comply with rule 1.100(c)'s notice requirements, Appellants cannot show prejudice by the court's failure to have given its reasons in writing (see Cal. Const., art. VI, § 13; Code Civ. Proc., § 475).  Neither argument is persuasive.

---

[29]     On its face, Robert's application for an accommodation discloses that it was filed on August 7 (to be heard on August 8) and sought an accommodation for a trial that was scheduled to commence less than two days later on August 9.  First-Citizens also tells us that Robert "never forwarded any such request to the ADA coordinator," but does not provide a record reference for this statement, and our review of the record does not disclose evidence one way or another.

[30]     First-Citizens' argument also requires us to infer that the court did not waive the five-day notice requirement (for either requesting the accommodation or forwarding it to the ADA coordinator), which is expressly authorized by rule 1.100(c)(3).

27

First-Citizens' first argument fails, because rule 1.100(e)(2)(B) does not excuse the requirement for a written explanation of the reason for denying a request when the applicant does not comply with rule 1.100(c). To the contrary, noncompliance with rule 1.100(c) is arguably one of the specifically identified grounds for denying the request (rule 1.100(f)(1)) and thus provides a valid basis on which to deny the request *so long as the denial is in writing with that explanation*. (Rule 1.100(e)(2)(B).) First-Citizens' second argument fails, because according to *Biscaro*, the court's failure to comply with the "mandatory dut[ies]" required in ruling on a request for accommodation under rule 1.100 is "structural error" that requires a reversal without the necessity of establishing prejudice. (*Biscaro*, *supra*, 181 Cal.App.4th at p. 710.)

Accordingly, based on the trial court's failure to have complied with rule 1.100(e)(2)(B)'s requirement that the court provide a written *reason* for denying Robert's request for accommodation, we reverse the amended judgment. We now consider what directions to provide on remand.

In *Biscaro*, the trial court never ruled on the defendant appellant's request for accommodation, instead issuing a restraining order against the appellant and entering a default judgment against him. (*Biscaro*, *supra*, 181 Cal.App.4th at p. 705.) Based on the court's *failure to have ruled on the request for accommodation*, the appellate court reversed the judgment and remanded with directions that the trial court "rule on appellant's request for accommodation of his disabilities and for any further proceedings that may be necessary based on that ruling." (*Id.* at p. 712.) In *James & Christine C.*, the trial court denied the appellant's request for accommodation on an impermissible ground

28

— i.e., one not specified in rule 1.100(f) — and proceeded to enter a family court judgment regarding child custody and visitation, support, attorney fees, and valuation and division of community property. (*James & Christine C.*, *supra*, 158 Cal.App.4th at pp. 1264-1265, 1271.) Based on the court's *erroneous denial of the requested accommodation*, the appellate court reversed the judgment, ruled that none of the three grounds specified in rule 1.100(f) (which could have supported the denial of the request) was present and remanded for a retrial of "the entire matter, from the outset." (*James & Christine C.*, at pp. 1277-1278.)

In contrast, here the court *did* rule on the request, but we do not have sufficient information — namely, a reason for the ruling — to determine whether the ruling was correct. Accordingly, we remand the matter to Judge Trask (who made the rulings contained in the August 8 Order) with directions that, based on the record that was before her on August 8 when she denied Robert's request for accommodation, she provide in writing the reason for the denial, as required by rule 1.100(e)(2)(B). If the stated reason is one or more of those specified in rule 1.100(f), then the court shall reinstate the amended judgment nunc pro tunc to October 3, 2013.[31] (See *Fox v. Hale & Norcross Silver Min. Co.* (1895) 108 Cal. 478, 480 [authority of court to order nunc pro tunc entry of judgment "is inherent in the court, and is to be exercised for the purpose of doing

---

[31] Appellants do not raise any issues or arguments regarding the actual trial proceedings, only that the court erred in not continuing them. Thus, if there was no error in denying the request for accommodation (i.e., in denying the continuance), then there is no basis on which to alter any of the rulings at trial — a trial at which Appellants were represented by counsel who stated to the court that his clients were not prepared to proceed and who asked to be allowed to leave the proceedings.

29

justice between the parties"]; *Dominguez v. City of Alhambra* (1981) 118 Cal.App.3d 237, 242 [appellate court has power to direct trial court to enter order nunc pro tunc].)  If the stated reason is anything other than one or more of those specified in rule 1.100(f) (or, if in articulating the reason, the court reconsiders its August 8 ruling and grants the request), then the court shall conduct further proceedings consistent with its ruling on remand.

## DISPOSITION

The October 3, 2013 amended judgment is reversed.  The matter is remanded to the Honorable Gloria Connor Trask with the following directions:  Based on the record that was before the court on August 8, 2013, when the court denied Robert Z.'s August 7, 2013 request for accommodation, Judge Trask shall provide in writing the reason for the August 8, 2013 denial, as required by California Rules of Court, rule 1.100(e)(2)(B).  If the stated reason is one or more of those specified in rule 1.100(f), then the court shall reinstate the amended judgment nunc pro tunc to October 3, 2013.  If the stated reason is anything other than one or more of those specified in rule 1.100(f) (or if the court reconsiders its ruling and grants the request), then the court shall conduct further proceedings consistent with its ruling on remand.

In the interests of the justice, the parties shall bear their respective costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)


IRION, J.

WE CONCUR:


HUFFMAN, Acting P. J.


McDONALD, J.