Filed 6/27/16  Marriage of Cuk CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re Marriage of SLOBODAN and DRAGANA VERA CUK. | |
| SLOBODAN CUK,<br><br>        Respondent,<br><br>        v.<br><br>DRAGANA VERA CUK,<br><br>        Appellant. | G050229<br><br>(Super. Ct. No. 04D008550)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Kim Garlin Dunning, Judge.  Affirmed.

Law Offices of Lillian Tomich and Lillian Tomich for Appellant.

No appearance by Respondent.

\*          \*          \*

Appellant Dragana Vera Cuk (Dragana) appeals from the judgment dividing the community property estate following her 18-month marriage to respondent Slobodan Cuk (Slobodan).[1]  Her challenges to the judgment focus on the trial court's ruling regarding a $2 million home the couple purchased just two weeks before they separated.

The trial court found the home was community property because the couple purchased it during the marriage and took title as joint tenants.  Nonetheless, the court confirmed the home as Slobodan's separate property in dividing the community estate because the court found Slobodan paid the entire $545,000 down payment with his separate property, Family Code section 2640 granted Slobodan the right to be reimbursed for that payment before dividing any community property interest, and after deducting Slobodan's reimbursement the value of the home was less than the outstanding balance on the interest only, amortizing loan the couple used to purchase the home.[2]

The trial court declined to assess any so-called "*Watts* charges," which would have required Slobodan to compensate the community for the reasonable value of his exclusive use of the home between the couple's separation and the trial.  The court found it was not equitable to impose the charges based on the totality of the circumstances, including the timing of the purchase, Slobodan's use of his separate property to pay the down payment and all other payments and expenses relating to the home, and the community's lack of any financial interest in the home.

Dragana contends the trial court erred in finding Slobodan paid the entire down payment with his separate property.  In her view, the weight of the evidence

---

[1]     For clarity, "we refer to the parties by their first names, as a convenience to the reader.  We do not intend this informality to reflect a lack of respect."  (*In re Marriage of Balcof* (2006) 141 Cal.App.4th 1509, 1513, fn. 2.)

[2]     All statutory references are to the Family Code.

2

showed Slobodan paid part of the down payment with his community property earnings. Dragana, however, forfeited this issue because she failed to summarize the evidence that supports the judgment and failed to explain why that evidence was insufficient. Instead, Dragana limited her argument to the evidence she thought supported her position. In any event, substantial evidence supports the trial court's judgment.

Next, Dragana contends the trial court erred in valuing the home at $2,014,527. According to Dragana, the testimony of her experts established the home's value was between $2.35 and $2.4 million, and the lesser valuation by Slobodan's expert lacked credibility. This argument amounts to little more than an improper request that we reweigh the evidence on appeal. This we may not do. The trial court acted well within its discretion by valuing the property based on the testimony of all the experts.

Finally, Dragana contends the trial court erred by declining to assess *Watts* charges against Slobodan because Slobodan stipulated he would not seek reimbursement for the separate property payments he made on the home after the couple's separation, and therefore there was no basis for the court to refuse to assess *Watts* charges. We disagree. As explained below, the court's decision was well within its discretion based on the totality of the circumstances, and we may not substitute our judgment for that of the trial court.

We affirm the trial court's judgment in its entirety.

I

FACTS AND PROCEDURAL HISTORY

Slobodan is an engineer and businessman who designs and manufactures power converters and power supplies. He holds several patents and is the sole shareholder in several companies he founded to market his services and products, including Optimum Power Conversion, Inc., doing business as TeslaCo (TeslaCo).

3

Slobodan lives and works in Orange County, California. Dragana was a journalist and television personality in her native Serbia. She is nearly 20 years younger than Slobodan.

The couple met at a Serbian state dinner in April 2001, where Dragana interviewed Slobodan for a Serbian newspaper. After Slobodan returned to California, a courtship developed as the two began to correspond through e-mails and phone calls. Slobodan returned to Serbia several times to visit Dragana. In December 2002, Dragana came to the United States on a journalist visa and the two began living together. The couple married in February 2003.

At the end of July 2004, the couple purchased a home in Laguna Niguel, California, but they separated two weeks later. Shortly after their separation, Slobodan filed a petition accusing Dragana of domestic violence and the court issued a temporary restraining order requiring her to keep away from Slobodan and the house they purchased. A month later, Slobodan filed this action to annul their marriage, or alternatively to dissolve it.

In October 2004, the couple entered into a stipulation and order to resolve the domestic violence allegations and issues related to the home. Slobodan agreed to dismiss his domestic violence petition and they both agreed to a mutual, nonviolent contact order requiring them to stay at least 100 yards away from each other. The two further agreed Slobodan would have "exclusive use, control and occupancy" of the Laguna Niguel home and he "shall be responsible for all mortgage payments, property taxes, insurance, home association dues, maintenance and any other costs relating to this property. [Dragana] shall still retain any and all community property interests, if any, to this property as determined by the court. [Slobodan] shall not be entitled to any community property reimbursement from [Dragana] for the payments, expenses, or costs expended by [Slobodan] while having the exclusive use, control, and occupancy of the home."

4

In late 2006, the court conducted a trial on Slobodan's request to annul the marriage. The court denied the request and later entered a judgment dissolving the couple's marriage. At a later trial on reserved property division issues, the couple stipulated (1) a $17,000 retirement account Slobodan owned was community property and should be divided evenly; (2) TeslaCo was Slobodan's separate property; (3) the couple purchased the Laguna Niguel home for $2 million approximately two weeks before they separated and title to the home was taken in both spouses' names; (4) the couple paid $545,000 into escrow as the down payment for the home and $400,000 of that sum came from a separate property retirement account Slobodan cashed out;[3] (5) Slobodan exclusively resided in the home following the couple's separation and he paid all house payments, taxes, and related expenses; and (6) Slobodan "stipulated to a waiver of *Epstein* credits relative to ongoing . . . expenses [for the home]."

After trial, the court issued a statement of decision finding the Laguna Niguel home was a community property asset because the couple purchased the home during their marriage and took title as joint tenants. The court valued the home at $2,014,527 and confirmed it as Slobodan's separate property because the court found Slobodan paid the entire $545,000 down payment with his separate property, section 2640 entitled Slobodan to be reimbursed for that payment before any community property interest in the home was divided, and that reimbursement was greater than the community's equity in the home based on the $1,590,000 balance due on the interest only, amortizing mortgage. Finally, the court found the totality of the circumstances did not justify assessing *Watts* charges against Slobodan to reimburse the community for his

---

[3]     At the close of escrow, the escrow company issued an $11,680 refund to Slobodan and Dragana that Slobodan apparently kept for himself. The parties raise no issue regarding the refund.

5

exclusive use of the community property home during the period between the couple's separation and the trial.[4]

After the trial court entered judgment, this appeal followed.

II

DISCUSSION

A. *Dragana Failed to Show the Trial Court Erred in Characterizing the Entire Down Payment as Slobodan's Separate Property*

Dragana contends the trial court erred in finding the disputed $145,000 portion of the down payment was Slobodan's separate property. According to Dragana, the weight of the evidence established these funds were community property earnings, and therefore Slobodan had no right to a $145,000 reimbursement under section 2640. We disagree.

A spouse has a statutory right to reimbursement for contributions to the acquisition or improvement of a community property asset if the spouse traces the contributions to a separate property source. (§ 2640, subd. (b); *In re Marriage of Cochran* (2001) 87 Cal.App.4th 1050, 1056-1057.) The reimbursement must be paid *before* the court divides any community property interest in the asset. (*In re Marriage of Geraci* (2006) 144 Cal.App.4th 1278, 1286; Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2015) ¶ 8:467, p. 8-172 ["A § 2640 reimbursement award comes *off the top* of the community property item(s) in question *before* the C[ommunity] P[roperty] interest in that property is divided"].) "If there is insufficient equity at the time of dissolution in the property to which the contribution was made to fully reimburse the contribution, the entire asset is awarded to the contributing spouse." (*In re Marriage*

_____

[4] The trial court made rulings about various property items other than the Laguna Niguel home, but Dragana only challenges the rulings relating to the home. We therefore do not address any of the other rulings.

6

*of Walrath* (1998) 17 Cal.4th 907, 913; see *Geraci*, at p. 1286.) "Whether the spouse claiming a separate property interest has adequately met his or her burden of tracing to a separate property source is a question of fact and the trial court's holding on the matter must be upheld if supported by substantial evidence." (*Cochran*, at pp. 1057-1058; see *In re Marriage of Braud* (1996) 45 Cal.App.4th 797, 823 (*Braud*).)

Here, the trial court found Slobodan adequately traced the disputed $145,000 to separate property sources, and therefore he was entitled to a reimbursement of those funds under section 2640. The court found the evidence was "overwhelming" that $66,000 of these disputed funds came from a separate property Merrill Lynch retirement account that Slobodan cashed out, deposited with TeslaCo, and then transferred to the couple's joint checking account for use toward the down payment. As for the remaining $79,000, the trial court found TeslaCo loaned these funds to Slobodan as his separate property, which he used as part of the down payment.

According to Dragana, these transfers from TeslaCo to Slobodan were community property profit distributions rather than separate property loans or transfers because they roughly coincided with TeslaCo receiving about $182,000 in profits. Dragana asserts TeslaCo's records failed to adequately establish a valid loan to Slobodan because no promissory note or other document recorded the terms of the loan, no minutes or board resolutions approved the loan, and no record existed showing Slobodan made any loan payments. Based on her expert's analysis, Dragana contends these profits were community property earnings based on Slobodan's work and efforts during the marriage because TeslaCo's records showed a dramatic change in the nature of the company's earnings that roughly coincided with the couple's wedding. In Dragana's view, TeslaCo originally derived most of its earnings from licensing fees based on patents Slobodan had developed before marrying Dragana, but that revenue stream dried up around the time of their wedding as the licensing agreements and patents expired. She contends TeslaCo's

7

increased earnings resulted from product development fees Slobodan generated during the marriage when he designed and developed products for other companies.[5]

The trial court rejected this argument because the court "[did] not find the testimony of [Dragana's] expert, Jamie Holmes, to be credible or persuasive on this point." As the court explained in its statement of decision, "The information upon which Mr. Holmes based his opinions was susceptible of several interpretations. The evidence upon which [Dragana] relied to demonstrate that profits or income to TeslaCo were the result of [Slobodan's] participation in the business and his own efforts did not reasonably support the expert's conclusions. During the parties' marriage, [Slobodan] received approximately $18,000 per month in salary from TeslaCo. His salary was, of course, community property and used to support the parties during their 18-month marriage. . . . [¶] Weighing the evidence, the court is persuaded the final $79,000 for the . . . down payment represented a loan from TeslaCo to [Slobodan] and constitutes [Slobodan's] separate property."

Dragana insists the trial court erred and the evidence she presented required the court to conclude the disputed portion of the down payment came from a community property source. In essence, she asks us to reweigh the evidence and reject the trial court's assessment of the witnesses' credibility. In doing so, Dragana fails to acknowledge the heavy burden the governing substantial evidence standard of review placed on her as the appellant, and the limits that standard places on us in reviewing the trial court's judgment.

---

[5] Dragana acknowledges the $66,000 from the Merrill Lynch account was Slobodan's separate property and that it was deposited with TeslaCo shortly before Slobodan made the down payment. She nonetheless argues that money was used to pay down previous loans TeslaCo made to Slobodan, and therefore all funds used to make the down payment were community property earnings.

"'The gist of the "substantial evidence" rule is: [¶] "When a trial court's factual determination is attacked on the ground that there is no substantial evidence to sustain it, the power of an appellate court begins and ends with the determination as to whether, on the entire record, there is substantial evidence, contradicted or uncontradicted, which will support the determination. . . ." [Citations.] [¶] 'So long as there is "substantial evidence," the appellate court *must affirm* . . . even if the reviewing justices personally would have ruled differently had they presided over the proceedings below, and even if other substantial evidence would have supported a different result. Stated another way, when there is substantial evidence in support of the trial court's decision, the reviewing court has *no power to substitute its deductions*.'" (*Rupf v. Yan* (2000) 85 Cal.App.4th 411, 429-430, fn. 5; see *Pope v. Babick* (2014) 229 Cal.App.4th 1238, 1245 ["We do not review the evidence to see if there is substantial evidence to support the losing party's version of events, but only to see if substantial evidence exists to support the verdict in favor of the prevailing party"].)

"'We must therefore view the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference and resolving all conflicts in its favor. . . .'" (*Bickel v. City of Piedmont* (1997) 16 Cal.4th 1040, 1053, abrogated by statute on another point in *DeBerard Properties, Ltd. v. Lim* (1999) 20 Cal.4th 659, 668-669.) "'It is axiomatic that an appellate court defers to the trier of fact on such determinations, and has no power to judge the effect or value of, or to weigh the evidence; to consider the credibility of witnesses; or to resolve conflicts in, or make inferences or deductions from the evidence.'" (*WorldMark, The Club v. Wyndham Resort Development Corp.* (2010) 187 Cal.App.4th 1017, 1029.) "[E]ven if the judgment of the trial court is against the weight of the evidence, we are bound to uphold it so long as the record is free from prejudicial error and the judgment is supported by evidence which is 'substantial,' that is, of "'ponderable legal significance,'" "'reasonable in nature,

9

credible, and of solid value. . . .'"'" (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 631.)

"An appellant challenging the sufficiency of the evidence to support the judgment must cite the evidence in the record supporting the judgment and explain why such evidence is insufficient as a matter of law. [Citations.] An appellant who fails to cite and discuss the evidence supporting the judgment cannot demonstrate that such evidence is insufficient. The fact that there was substantial evidence in the record to support a contrary finding does not compel the conclusion that there was no substantial evidence to support the judgment. An appellant . . . who cites and discusses only evidence in her favor fails to demonstrate any error and waives the contention that the evidence is insufficient to support the judgment." (*Rayii v. Garcia* (2013) 218 Cal.App.4th 1402, 1408; see *Arechiga v. Dolores Press, Inc.* (2011) 192 Cal.App.4th 567, 572, overturned by statute on other grounds, Stats. 2012, ch. 820, § 1, p. 6511.)

Dragana forfeited her challenge to the sufficiency of the evidence because she flatly ignores the evidence Slobodan presented to support his separate property claim and provides no explanation why this evidence fails to support the trial court's judgment. Instead, Dragana focuses on her expert's testimony and points to various exhibits she contends support her expert's conclusions without even acknowledging Slobodan's evidence, which included his own testimony, the testimony of his and TeslaCo's certified public accountant, and the exhibits he submitted.[6]

---

[6] We note Dragana also forfeited her substantial evidence challenge to the trial court's judgment because she failed to provide an adequate record. For example, the record she designated includes all of her exhibits that were admitted at trial, but only one of Slobodan's several exhibits. As the appellant, Dragana bore the burden to provide an adequate record to review the sufficiency of the evidence to support the trial court's judgment. (*Oliveira v. Kiesler* (2012) 206 Cal.App.4th 1349, 1362; see *Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 187 ["'"if the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed"'"]; *Osgood v. Landon* (2005) 127 Cal.App.4th 425, 435 ["'a record is inadequate, and appellant defaults, if the appellant predicates error only on the part of the

10

For example, Dragana fails to address Slobodan's testimony about cashing out his Merrill Lynch account, depositing that money with TeslaCo, and then promptly transferring it to the couple's joint checking account for use toward the down payment. She also ignores Slobodan's testimony that he borrowed other funds for the down payment from TeslaCo, the work he performed for TeslaCo during the marriage, and the salary TeslaCo paid him for that work. Also unmentioned in Dragana's brief is the certified public accountant's testimony about TeslaCo's loans to Slobodan, and the accountant's testimony that he categorized most of TeslaCo's income during the marriage as product development income because he faced a deadline for filing the company's taxes and he could not get Slobodan to provide the necessary details about the income to categorize it. According to the accountant, the taxing authorities were not concerned about the particular type of income as long as the company reported the income, and therefore the accountant simply identified unknown sources of income as product development income. Finally, Dragana does not identify or address any of the exhibits Slobodan submitted to support his tracing, including wire transfer receipts, documentation regarding his withdrawal from Merrill Lynch, and various other banking records.

Although Dragana forfeited her challenge to the sufficiency of the evidence, we conclude that challenge also fails on the merits because substantial evidence supports the trial court's judgment the entire down payment was made with Slobodan's separate property.

---

record he provides the trial court, but ignores or does not present to the appellate court portions of the proceedings below which may provide grounds upon which the decision of the trial court could be affirmed'"].)

11

B.      *Substantial Evidence Supports the Trial Court's Valuation of the Laguna Niguel Home*

Dragana contends the trial court erred by undervaluing the Laguna Niguel home, and then concluding the community had no equity in the home because the sum of the outstanding balance on the mortgage and Slobodan's section 2640 reimbursement claim exceeded the court's valuation. According to Dragana, the evidence supported a valuation between $2.35 and $2.4 million rather than the court's $2,014,527 valuation. We reject the claim because it is nothing more than an improper attempt to reargue the evidence on appeal.

In dividing the community estate, the trial court has "the responsibility to fix the value of assets and liabilities in order to accomplish an equal division." (*In re Marriage of Duncan* (2001) 90 Cal.App.4th 617, 631 (*Duncan*).) "'The trial court possesses broad discretion to determine the value of community assets as long as its determination is within the range of the evidence presented. [Citation.] The valuation of a particular asset is a factual question for the trial court, and its determination will be upheld on appeal if supported by substantial evidence in the record.'" (*In re Marriage of Iredale & Cates* (2004) 121 Cal.App.4th 321, 329; *Duncan*, at p. 632 ["The trial court's determination of the value of a particular asset is a factual one and as long as that determination is within the range of the evidence presented, we will uphold it on appeal"].)

"In the exercise of its broad discretion, the trial court 'makes an independent determination of value based upon the evidence presented on the factors to be considered and the weight given to each. The trial court is not required to accept the opinion of any expert as to the value of an asset.' [Citations.] Differences between the experts' opinions go to the weight of the evidence. [Citation.] Rather, the court must determine which of the recognized valuation approaches will most effectively achieve substantial justice between the parties." (*Duncan*, *supra*, 90 Cal.App.4th at p. 632.)

"'[R]esolution of conflicts in the evidence, assessment of the credibility of the witnesses and the weight to be given the opinions of the experts [a]re all matters within the exclusive province of the [trial court as the] trier of fact." (*In re Marriage of Ackerman* (2006) 146 Cal.App.4th 191, 204.)

Here, the couple's Laguna Niguel home was more than 4,800 square feet and sat on a lot that exceeded 11,000 square feet. The home had a large spa with "'city lights'" and canyon views, and it was across the street from similar homes with unobstructed ocean views. Slobodan's expert appraiser valued the home at $1.7 million based on his analysis of comparable homes in the same development and the nearby area. Dragana's expert appraiser valued the home at $2.2 million a few months before trial based on comparable sales in the area, and also testified the home likely was worth between $2.4 and $2.45 million at the time of trial because the real estate market in the Laguna Niguel area showed significant improvement since the expert had performed his earlier appraisal. Dragana also presented testimony from a real estate broker who testified she would list the home at $2.45 million and expect it to sell for $2.35 million based on the recent sale of the home across the street and the steadily increasing real estate market in the area.

The trial court considered all of these valuations on a price per square foot basis, noting Slobodan's appraiser valued the home at $351 per square foot, Dragana's appraiser valued it at $455 per square foot, and Dragana's broker valued the home at $497 per square foot. The court also noted the various appraisal reports identified comparable homes in the same development with pools, spas, and unobstructed ocean views recently sold for $458 and $476 per square foot, and that other homes with views similar to the couple's home, but on smaller lots and without a pool or spa recently sold for $358 and $383 per square foot. Based on these valuations and sales, the home's specific characteristics, and the home's condition, which included "a fair amount of

13

deferred maintenance," the court determined the home had a value of "no more than $417 per square foot, or $2,014,527."

We conclude substantial evidence supports the trial court's conclusion because it falls well within the range of the valuations the parties presented and demonstrates the court carefully considered the home's specific features and its condition in comparison to the other homes the experts considered in providing their valuations. Dragana attacks the appraisal performed by Slobodan's appraiser, arguing he failed to consider the rapidly rising market and relied on other sales that were too remote in time and involved dissimilar homes. But Slobodan's appraiser adjusted the price of the comparable sales to account for both when the sale of the comparable homes occurred and the individual features of the homes. More importantly, Dragana fails to recognize the trial court did not simply adopt the valuation offered by Slobodan's appraiser. Rather, the trial court considered the valuation testimony by all experts and the sale prices for the other homes those experts identified to independently arrive at the court's own valuation. The trial court properly exercised its discretion and we decline Dragana's invitation to intrude upon the trial court's exclusive province by reweighing the evidence. (See *In re Marriage of Bergman* (1985) 168 Cal.App.3d 742, 754 [upholding trial court's independent valuation because the record revealed "[t]he court rejected the opinion of each expert . . . but nonetheless was presented with sufficient evidence in the course of their testimony to reach its own independent determination"].)

C.    *The Trial Court Did Not Abuse Its Discretion in Declining to Assess* Watts *Charges Against Slobodan for His Exclusive Use of the Community Home*

Dragana contends the trial court erred in failing to assess *Watts* charges against Slobodan for his exclusive use of the Laguna Niguel home during the nearly nine years that elapsed between the couple's separation and the court's division of the community estate. According to Dragana, the trial court's duty to equally divide the community estate required the court to charge Slobodan for the reasonable value of his

14

exclusive use of the community home because he waived any offsetting claim to reimbursement for the payments he made toward the home and its maintenance during this period.  We disagree.

"'Where one spouse has the exclusive use of a community asset during the period between separation and trial, that spouse may be required to compensate the community for the reasonable value of that use.'  [Citation.]  The right to such compensation is commonly known as a '*Watts* charge.'  [Citation.]  Where the *Watts* rule applies, the court is 'obligated either to order reimbursement to the community or to offer an explanation for not doing so.'"  (*In re Marriage of Falcone & Fyke* (2012) 203 Cal.App.4th 964, 978 (*Falcone*); see *In re Marriage of Watts* (1985) 171 Cal.App.3d 366, 373-374 (*Watts*).)  A closely related concept is a so-called "*Epstein* credit."  (*In re Marriage of Epstein* (1979) 24 Cal.3d 76, 84-85 (*Epstein*).)  When a spouse uses separate property funds after separation to pay a preexisting community obligation, the paying spouse may seek a credit for those payments upon division of the community estate. (*In re Marriage of Cooper* (2016) ___ Cal.App.4th ___, ___ [2016 WL 3138012, *10] (*Cooper*); *Epstein*, at pp. 84-85.)  Accordingly, *Watts* charges can be viewed as "'usage charges'" and *Epstein* credits can be viewed as "'payment credits.'"  (*In re Marriage of Jeffries* (1991) 228 Cal.App.3d 548, 552.)

"The determinations of *Watts* charges and *Epstein* credits are matters addressed to the sound discretion of the trial court.  'When a trial court concludes that property contains both separate and community interests, the court has broad discretion to fashion an apportionment of interests that is equitable under the circumstances of the case.'  [Citations.]  Stated another way, 'reimbursement is not automatic, but involves the consideration of . . . a variety of factors' such as whether the parties had an agreement, the rental value of the asset being used exclusively by one spouse, whether the conduct of one spouse led to losses to the community, whether exclusive use of the asset represented a duty of support, and additional considerations."  (*Cooper*, *supra*, ___ Cal.App.4th at

15

p. ___ [2016 WL 3138012, *10]; see *Falcone*, *supra*, 203 Cal.App.4th at p. 979 ["The trial court determines what is due the community 'after taking into account all the circumstances' relevant to the exclusive possession by one spouse"].)  Indeed, after considering all of the surrounding circumstances, the trial court may deny *Watts* charges if it determines it would be unfair or unreasonable to charge a spouse for his or her exclusive use of a community asset.  (*Watts*, *supra*, 171 Cal.App.3d at pp. 373-374; see *Braud*, *supra*, 45 Cal.App.4th at p. 819.)

We review a trial court's decision on *Watts* charges for abuse of discretion. (*In re Marriage of Hebbring* (1989) 207 Cal.App.3d 1260, 1272.)  "Under this standard, a trial court's ruling 'will be sustained on review unless it falls outside the bounds of reason.' [Citation.]  We could therefore disagree with the trial court's conclusion, but if the trial court's conclusion was a reasonable exercise of its discretion, we are not free to substitute our discretion for that of the trial court." (*Avant! Corp. v. Superior Court* (2000) 79 Cal.App.4th 876, 881-882; see *Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773 [to be abuse of discretion, trial court decision must be "'so irrational or arbitrary that no reasonable person could agree with it'"].)

Here, the trial court considered all of the surrounding circumstances and declined to assess *Watts* charges against Slobodan because the court "[could] find no equity in ordering *Watts* charges [on the facts presented]."  We agree and find no abuse of discretion.

Slobodan and Dragana bought the home less than two weeks before they separated, with Slobodan paying the entire $545,000 down payment with his separate property.  Although the trial court found the home to be community property because the couple purchased it during their marriage and took title as joint tenants, the court nonetheless confirmed the home as Slobodan's separate property when the court divided

16

the community estate because the community had no equity in the home after awarding Slobodan his section 2640 reimbursement for the down payment.

Except for the first two weeks the couple owned the home, Slobodan had exclusive use of the property. The court originally ordered Dragana to move out of the home upon the couple's separation based on Slobodan's allegations she had physically abused him. A few weeks later, the couple stipulated Slobodan would have exclusive use of the home until the community estate was divided, and he would be responsible for paying the mortgage, taxes, homeowner's association dues, insurance, and other costs associated with the home. He met his obligations under this stipulation through the time of trial.

California courts have held a spouse in possession of a community asset following separation may discharge his or her duty to compensate the community for the exclusive use of the asset—that is, the duty to pay *Watts* charges—by paying the monthly finance payments and all costs associated with the asset if those payments roughly approximate the reasonable value of the spouse's exclusive use. (*Falcone*, *supra*, 203 Cal.App.4th at pp. 978-979; *In re Marriage of Garcia* (1990) 224 Cal.App.3d 885, 891.) The facts of this case supports the trial court's application of this rule regardless of the relationship between the amounts Slobodan paid and the value of his exclusive use of the home because he paid the entire down payment and all other payments and expenses with his separate property, and the community purchased the home just two weeks before the couple separated.

Although the home was a community asset based on the time of its purchase and its title, the community never had any financial interest in the home because no community assets were used to purchase or maintain it, and the home experienced no meaningful appreciation in value. If the home had been sold at the time of separation, the community would not have received any of the proceeds because the couple separated before the first house payment was made, and therefore Slobodan's reimbursement claim

for the down payment and the payoff for the loan would have consumed all of the sale proceeds. Similarly, as explained above, the trial court found the community had no equity in the home at the time of trial because the amount due on the loan and Slobodan's reimbursement claim totaled more than the home's value.

Dragana contends Slobodan cannot claim any benefit for making the payments on the house following the couple's separation because the stipulation granting him exclusive use stated he "shall not be entitled to any community property reimbursement from [Dragana] for the payments, expenses, or costs expended by [Slobodan] while having the exclusive use, control and occupancy of the home." Dragana interprets this provision as a waiver of Slobodan's right to claim *Epstein* credits for the payments he made, and therefore the trial court should not have considered those payments in determining whether to assess *Watts* charges against Slobodan. Not so.

Slobodan is not seeking any reimbursement from Dragana or the community for the payments he made on the home. Rather, he simply seeks to avoid paying twice for using the home purchased with his separate property and in which the trial court found the community had no financial interest. Under Dragana's interpretation of the stipulation, Slobodan would have to pay both the costs of owning the home and rent for using the home. That is not what the stipulation says and Dragana presents no evidence or authority entitling her to such a windfall. The court considered the stipulation and all other surrounding circumstances, and concluded it was not fair or reasonable to assess *Watts* charges against Slobodan. The court's fair and sensible decision can hardly be characterized as an abuse of discretion.

Finally, Dragana contends the trial court applied an erroneous legal standard by declining to impose *Watts* charges because it "'[could] find no equity in ordering *Watts* charges here.'" According to Dragana, equity, defined as "'[t]he remaining interest belonging to one who has pledged or mortgaged his property,'" does

18

not "affect[] the obligation of the spouse in possession to pay to the community reasonable rental for his exclusive use."  Dragana misconstrues the trial court's ruling.

Although the community's lack of any equity in the home was one of the many factors the trial court considered, the court did not conclude the community must have equity in the home before *Watts* charges may be assessed.  Rather, the quote from the trial court's ruling merely meant the court found it was not equitable, that is, fair, to order *Watts* charges based on the totality of the circumstances.  That is the proper legal standard.  (*Cooper*, *supra*, ___ Cal.App.4th at p. ___ [2016 WL 3138012, *10]; *Braud*, *supra*, 45 Cal.App.4th at p. 819; *Watts*, *supra*, 171 Cal.App.3d at p. 373-374.)

III

DISPOSITION

The judgment is affirmed.  In the interests of justice, the parties shall bear their own costs on appeal.


ARONSON, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


FYBEL, J.

19