[No. H019847. Sixth Dist. Apr. 6, 2000.]

AVANT! CORPORATION, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
ERIC NEQUIST, Real Party in Interest.

878

**COUNSEL**

O'Melveny & Myers, Daniel H. Bookin, Darin W. Snyder, Lori E. Romley and Stuart C. Plunkett for Petitioner.

No appearance for Respondent.

Graham & James; Oppenheimer, Wolfe & Donnelly, Michael H. Kalkstein, Chris Scott Graham and Valerie M. Wagner for Real Party in Interest.

**OPINION**

**PREMO, J.**—Avant! Corporation (hereafter, Avant) seeks a writ of mandate to vacate the order of the trial court denying Avant's motion to stay civil proceedings or to stay discovery pending the disposition of a related criminal case.

We deny the petition.

### BACKGROUND.

On July 15, 1998, real party in interest Eric Nequist filed a civil complaint against Avant for defamation, intentional infliction of emotional distress, negligent and intentional interference with economic advantage, abuse of process, and unfair competition and business practices. The complaint alleged, inter alia, that Avant had: (1) publicly and falsely stated in its Web site that Nequist had admitted to committing insider trading and perjury; (2)

made these defamatory statements as part of a course of conduct of disseminating false and misleading information to the public; and (3) engaged in this scheme of disinformation to draw attention away from its own criminal conduct of obtaining improper advantage in two other pending proceedings, namely: *Cadence Design Systems, Inc. v. Avant! Corp.* (U.S.Dist.Ct., N.D. Cal., No. CZ95-20828RMW (PUT)) (hereafter, *Cadence v. Avant*), and *People v. Avant!* (Super. Ct. Santa Clara County, No. 206394) (hereafter, *People v. Avant*). Nequist is not a party to *Cadence v. Avant*. The complaint prays for damages and injunctive relief.

*Cadence v. Avant* is a civil case filed by Cadence against Avant for copyright infringement and theft of trade secrets. Avant counterclaimed against Cadence, alleging that individuals associated with Cadence had engaged in insider trading of Avant stock. Nequist was named as one of those individuals.

*People v. Avant* is a criminal indictment returned by the Santa Clara County Grand Jury against Avant and eight individuals, seven of whom are either current or former Avant employees. The indictment was the result of the search of Avant's offices by the Santa Clara County District Attorney's office.

The posting in Avant's Web page that triggered the present controversy read, in pertinent part: "A former Cadence employee has disclosed the insider trading scheme [by Cadence insiders] . . . . On December 7, 1995 . . . Eric Nequist, an officer of Cooper & Chyan Technologies and a former Cadence employee, stated that he had shorted Avant! stock while in possession of confidential information obtained directly from Costello regarding the District Attorney's criminal investigation and search of Avant!. Nequist stated that he had a personal relationship with Costello, and that Costello had informed him well in advance about the criminal investigation and pending search of Avant! Headquarters. Nequist stated that both he and Costello had shorted the stock and had 'cleaned up.' When questioned about the legality of his conduct, Nequist responded: 'I think [Avant! has] more important things to worry about . . . . Anyway, they have to catch us first.' "

In his deposition in *Cadence v. Avant*, and in his verified responses to interrogatories in this case, Nequist denied making the statements attributed to him in the Avant Web site, and denied ever shorting or trading in Avant stocks, or committing criminal insider trading of any kind.

Nequist formally requested Avant to remove the statements relating to Nequist from the Avant Web site and to issue a retraction. Avant initially

refused, then later suggested that it might remove the statements in return for concessions from Nequist in the discovery process. Nequist insisted on unconditional withdrawal, which Avant refused. Six months later on February 26, 1999, after Avant had filed its motion to stay proceedings or to stay discovery, Avant removed the statements in question from its Web page.

As part of the discovery process, Nequist propounded to Avant requests for admission (RFA), as follows:

RFA 1. "Admit that Mitsuru Igusa had in his possession, on or about November 10, 1994, at least a portion of Cadence Source Code."

RFA 2. "Admit that Chih-Liang Cheng took a copy of at least a portion of Cadence Source Code when he left employment with Cadence."

RFA 3. "Admit that Chih-Liang Cheng turned over at least a portion of Cadence Source Code to AVANT!."

RFA 4. "Admit that AVANT! has received at least a portion of Cadence Source Code."

RFA 5. "Admit that AVANT ! has used at least a portion of Cadence Source Code in one or more of its products."

RFA 6. "Admit that, following the discovery of at least a portion of Cadence Source Code at the home of Mitsuru Igusa on or about November 10, 1994, AVANT! anticipated that it would face prosecution by law enforcement agencies for trade secret theft."

RFA 7. "Admit that, following the discovery of at least a portion of Cadence Source Code at the home of Mitsuru Igusa on or about November 10, 1994, AVANT! anticipated that it would face a civil lawsuit by Cadence for trade secret theft."

RFA 11. "Admit that, in connection with the search of AVANT!'s premises on or about December 5, 1995, law enforcement agencies located electronic files which included Cadence trade secrets."

Nequist accompanied his requests for admission with a form interrogatory seeking "all facts" upon which Avant would base responses that are not unqualified admissions and the identification of all knowledgeable persons and all documents that support Avant's responses.

Avant objected to Nequist's discovery requests relating to issues which are also involved in the related criminal action. Nequist filed a motion to compel responses.

Following the hearing on Nequist's motion to compel, the discovery master, retired Justice Harry F. Brauer: (1) sustained Avant's general objection to the inclusive definition of "you" in the request for admission, and ruled that "the responding entity shall be defined as Avant! Corporation," adding that "[t]his ruling does not limit Avant!'s obligations under the Code of Civil Procedure to provide responsive, *non-privileged* information in the custody and control of its officers, employees and agents." (Italics added.)

(2) Overruled Avant's relevance objections, stating that the discovery requests were related to specific allegations in Nequist's complaint and reasonably calculated to lead to the discovery of admissible evidence.

(3) Overruled Avant's objections with regard to the pendency of *People v. Avant!* because that objection "has been taken care of by my insistence that the individuals are taken out of the category of 'you.' So I just don't see how anybody who has the privilege would be affected by any answer that the corporation gives."

Avant objected to the discovery referee's recommendations. The trial court overruled Avant's objections, approved the discovery referee's recommendations in their entirety, and denied Avant's motion to stay.

This petition for a writ of mandate ensued.

## DISCUSSION

Although writ review of discovery orders is not favored, it is appropriate in matters of first impression, which have importance to the courts and the profession, and in situations where general guidelines can be established for future cases. (*Oceanside Union School Dist. v. Superior Court* (1962) 58 Cal.2d 180, 185-186, fn. 4 [23 Cal.Rptr. 375, 373 P.2d 439].) The issue of whether a corporation that is a defendant in related criminal and civil actions may obtain a stay of discovery in the civil action while the criminal action is pending is, in California, an issue of first impression.

The standard of review for discovery orders is abuse of discretion. (*Oceanside Union School Dist. v. Superior Court, supra*, 58 Cal.2d at pp. 185-186.) Abuse of discretion is a deferential standard of review. (*People v. Williams* (1998) 17 Cal.4th 148, 162 [69 Cal.Rptr.2d 917, 948 P.2d 429].) Under this standard, a trial court's ruling "will be sustained on review unless it falls outside the bounds of reason." (*People v. DeSantis* (1992) 2 Cal.4th 1198, 1226 [9 Cal.Rptr.2d 628, 831 P.2d 1210].) We could therefore disagree with the trial court's conclusion, but if the trial court's conclusion was

a reasonable exercise of its discretion, we are not free to substitute our discretion for that of the trial court.

The rationale for applying the abuse of discretion standard to discovery reviews was explained in *People v. Coleman* (1975) 13 Cal.3d 867, 884-885 [120 Cal.Rptr. 384, 533 P.2d 1024]: "The defendant may well be required to make incriminating admissions if he is to have a meaningful chance of avoiding the loss through judicial process of a substantial amount of property. Some courts have been sympathetic to such a situation and have stayed the civil proceedings until disposition of the related criminal prosecution. [Citations.] Other courts have refused to go beyond allowing civil defendants to refuse to answer particular questions propounded in the course of discovery by expressly invoking their privilege against self-incrimination. [Citation.] [¶] Whatever their response to requests for accommodation of the conflicting constitutional rights of a defendant in concurrent civil and criminal proceedings, courts have consistently refrained from recognizing any *constitutional* need for such accommodation. Rather, the alleviation of tension between constitutional rights has been treated as within the province of a court's discretion in seeking to assure the sound administration of justice. 'There may be cases where the requirement that a criminal defendant participate in a civil action, at peril of being denied some portion of his worldly goods, violates concepts of elementary fairness in view of the defendant's position in an inter-related criminal prosecution. On the other hand, the fact that a man is indicted cannot give him a blank check to block all civil litigation on the same or related underlying subject matter. Justice is meted out in both civil and criminal litigation. The overall interest of the courts that justice be done may very well require that the compensation and remedy due a civil plaintiff should not be delayed (and possibly denied). The court, in its sound discretion, must assess and balance the nature and substantiality of the injustices claimed on either side.' [Citation.]" (Italics in original.)

■ It is clear from *Coleman* that staying a civil discovery process to await the outcome of a related criminal case does not implicate constitutional issues, even when the defendant raising the question is an individual defendant, as was the case in *Coleman*. For reasons discussed *infra*, corporations do not deserve more.

In *Pacers, Inc. v. Superior Court* (1984) 162 Cal.App.3d 686, 690 [208 Cal.Rptr. 743], the Fourth Appellate District held that "[w]here . . . a defendant's silence is constitutionally guaranteed, the court should weigh the parties' competing interests with a view toward accommodating the interests of both parties, if possible. An order staying discovery until expiration of the

criminal statute of limitations would allow real parties to prepare their lawsuit while alleviating petitioners' difficult choice between defending either the civil or criminal case."

The *Pacers* court noted that the remedy it provided was "in accord with federal practice where it has been consistently held that when both civil and criminal proceedings arise out of the same or related transactions, an objecting party is generally entitled to a stay of discovery in the civil action until disposition of the criminal matter. [Citations]" (*Pacers, Inc. v. Superior Court, supra*, 162 Cal.App.3d at p. 690.) However, the cases cited by Pacers in support of this observation (*Campbell v. Eastland* (5th Cir. 1962) 307 F.2d 478; *Perry v. McGuire* (S.D.N.Y. 1964) 36 F.R.D. 272; *Paul Harrigan & Sons, Inc. v. Enterprise Animal Oil Co., Inc.* (E.D.Pa. 1953) 14 F.R.D. 333; and *National Discount Corp. v. Holzbaugh* (E.D.Mich. 1952) 13 F.R.D. 236) involved claims of individual defendants, not of a corporate defendant, as here. *Pacers* is therefore of little precedential value to the issues involved in this petition. Evidently because corporate Fifth Amendment rights were not an issue in *Pacers*, the *Pacers* court did not discuss the three United States Supreme Court cases (*Hale v. Henkel* (1906) 201 U.S. 43 [26 S.Ct. 370, 50 L.Ed. 652]; *Wilson v. United States* (1911) 221 U.S. 361 [31 S.Ct. 538, 55 L.Ed. 771]; *United States v. Kordel* (1970) 397 U.S. 1 [90 S.Ct. 763, 25 L.Ed.2d 1]) that demonstrate a federal practice different from that found in *Pacers*.

In *Wilson v. United States, supra*, 221 U.S. at pages 382-383 [31 S.Ct. at page 545], the United States Supreme Court held that, unlike private individuals, corporations have no privilege against self-incrimination. The rationale was given as early as 1906 in *Hale v. Henkel, supra*, 201 U.S. at pages 74-75 [26 S.Ct. at page 379], as follows: "Conceding that the witness was an officer of the corporation under investigation, and that he was entitled to assert the rights of the corporation with respect to the production of its books and papers, we are of the opinion that there is a clear distinction in this particular between an individual and a corporation, and that the latter has no right to refuse to submit its books and papers for an examination at the suit of the State. The individual may stand upon his constitutional rights as a citizen. He is entitled to carry on his private business in his own way. His power to contract is unlimited. He owes no duty to the State or to his neighbors to divulge his business, or to open his doors to an investigation, so far as it may tend to criminate him. He owes no such duty to the State, since he receives nothing therefrom, beyond the protection of his life and property. His rights are such as existed by the law of the land long antecedent to the organization of the State, and can only be taken from him by due process of law, and in accordance with the Constitution. Among his rights are a refusal

to incriminate himself, and the immunity of himself and his property from arrest or seizure except under a warrant of the law. He owes nothing to the public so long as he does not trespass upon their rights. [¶] Upon the other hand, the corporation is a creature of the State. It is presumed to be incorporated for the benefit of the public. It receives certain special privileges and franchises, and holds them subject to the laws of the State and the limitations of its charter. Its powers are limited by law. It can make no contract not authorized by its charter. Its rights to act as a corporation are only preserved to it so long as it obeys the laws of its creation. There is a reserved right in the legislature to investigate its contracts and find out whether it has exceeded its powers. It would be a strange anomaly to hold that a State, having chartered a corporation to make use of certain franchises, could not in the exercise of its sovereignty inquire how these franchises had been employed, and whether they had been abused, and demand the production of the corporate books and papers for that purpose. The defense amounts to this: That an officer of a corporation, which is charged with a criminal violation of the statute, may plead the criminality of such corporation as a refusal to produce its books. To state this proposition is to answer it. While an individual may lawfully refuse to answer incriminating questions unless protected by an immunity statute, it does not follow that a corporation, vested with special privileges and franchises, may refuse to show its hand when charged with an abuse of such privileges. [¶] It is true that the corporation in this case was chartered under the laws of New Jersey, and that it receives its franchise from the legislature of that State; but such franchises, so far as they involve questions of interstate commerce, must also be exercised in subordination to the power of Congress to regulate such commerce, and in respect to this the General Government may also assert a sovereign authority to ascertain whether such franchises have been exercised in a lawful manner, with a due regard to its own laws. Being subject to this dual sovereignty, the General Government possesses the same right to see that its own laws are respected as the State would have with respect to the special franchises vested in it by the laws of the State. The powers of the General Government in this particular in the vindication of its own laws, are the same as if the corporation had been created by an act of Congress."

The rule that corporations have no privilege against self-incrimination was reaffirmed in *United States v. Kordel, supra,* 397 U.S. 1. *Kordel* added that "service of the interrogatories obliged the corporation to 'appoint an agent who could, without fear of self-incrimination, furnish such requested information as was available to the corporation.' [Fn. omitted.] The corporation could not satisfy its obligation . . . simply by pointing to an agent about to invoke *his* constitutional privilege. 'It would indeed be incongruous to permit a corporation to select an individual to verify the corporation's

answers, who because *he* fears self-incrimination may thus secure for the corporation the benefits of a privilege it does not have.' [Fn. omitted.] Such a result would effectively permit the corporation to assert on its own behalf the personal privilege of its individual agents." (*Id.* at p. 8 [90 S.Ct. at pp. 767-768], italics in original.)

Even where the civil discovery process is directed against an individual defendant who is also a defendant in a related criminal case, the Ninth Circuit has held that "[t]he Constitution does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings. [Citations.]" (*Keating v. Office of Thrift Supervision* (9th Cir. 1995) 45 F.3d 322, 324.) *Keating* observed that the question of whether a civil proceeding should be stayed pending the outcome of a parallel criminal proceeding often rests not on the constitutional issue of self-incrimination, but on the issue of abuse of discretion. " 'In the absence of substantial prejudice to the rights of the parties involved, [simultaneous] parallel [civil and criminal] proceedings are unobjectionable under our jurisprudence.' [Citation.] 'Nevertheless, a court may decide in its discretion to stay civil proceedings . . . "when the interests of justice seem[ ] to require such action." ' [Citations.]" (*Ibid.*)

*Keating* further stated: "The decision whether to stay civil proceedings in the face of a parallel criminal proceeding should be made 'in light of the particular circumstances and competing interests involved in the case.' [Citation.] This means the decisionmaker should consider 'the extent to which the defendant's fifth amendment rights are implicated.' [Citation.] In addition, the decisionmaker should generally consider the following factors: (1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation. [Citation.]" (*Keating v. Office of Thrift Supervision, supra,* 45 F.3d at pp. 324-325.)

Concluding that the administrative law judge's refusal to stay the civil proceeding was not an abuse of discretion, *Keating,* citing *Baxter v. Palmigiano* (1976) 425 U.S. 308, 318 [96 S.Ct. 1551, 1557, 47 L.Ed.2d 810], held that "[a] defendant has no absolute right not to be forced to choose between testifying in a civil matter and asserting his Fifth Amendment privilege. Not only is it permissible to conduct a civil proceeding at the same time as a related criminal proceeding, even if that necessitates invocation of the Fifth Amendment privilege, but it is even permissible for the trier of fact to draw

adverse inferences from the invocation of the Fifth Amendment in a civil proceeding." (*Keating v. Office of Thrift Supervision, supra*, 45 F.3d at p. 326.)

■ Here, Avant concedes that being a corporation, it has no Fifth Amendment privilege against self-incrimination. Nevertheless, Avant argues that the trial court abused its discretion when it denied Avant's motion to stay, because: (1) Avant's interests strongly favor a stay; (2) Nequist has only minimal interests in avoiding a stay; and (3) other factors uniformly favor a stay.

In contending that Avant's interests favor a stay, Avant argues that Fifth Amendment interests compel a stay because "[w]hen, as in this case, the corporation's employees have fifth amendment interests, '[t]he implication of the right against self-incrimination must be given serious consideration.' "

The strength of this proposition depends on the trial court's ability or lack of ability to fashion a remedy that would protect the employees' Fifth Amendment interests while subjecting the corporation to the compulsion of the discovery procedure. Clearly, because a corporation has no right against self-incrimination, it has no Fifth Amendment interests to protect.

As to the employees' Fifth Amendment rights that may be affected by a discovery order compelling Avant to respond to Nequist's requests for admission and interrogatory, the analysis should recognize that in the discovery context, the trial court's refusal to stay the discovery process or the civil action pending the disposition of the parallel criminal case is not reviewed on Fifth Amendment grounds, but on abuse of discretion grounds, even where the employees are the defendants and the requests for admission and interrogatory are directed to those employees. As stated by the Federal Circuit in *Afro-Lecon, Inc. v. U.S.* (Fed.Cir. 1987) 820 F.2d 1198, 1202: "The Constitution does not require a stay of civil proceedings pending the outcome of criminal proceedings. [Citation.] A court, however, has the discretion to stay civil proceedings, postpone civil discovery, or impose protective orders and conditions ' "when the interests of justice seem[] to require such action, sometimes at the request of the prosecution, . . . sometimes at the request of the defense[.]" ' [Citations.]" *Brock v. Tolkow* (E.D.N.Y. 1985) 109 F.R.D. 116, 119, also recognized that "it is not unconstitutional to force a litigant to choose between invoking the fifth amendment in a civil case, thus risking a loss there, or answering the questions in the civil context, thus risking subsequent criminal prosecution. [Citations.]" Consequently, Avant's claim that where the corporation's employees have Fifth Amendment interests, the implication of the right against self-incrimination must be given

serious consideration, while true, is not overriding, particularly where, as here, the trial court had fashioned a remedy to protect the employees' Fifth Amendment rights by requiring Nequist to limit the definition of "you" to Avant and for Avant to provide "non-privileged information in the custody and control of its officers, employees and agents."

As stated, the other factors *Keating* recognized in determining the question of whether a civil proceeding should be stayed pending the disposition of the parallel criminal proceeding, are: (1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation.

On the first additional factor, there is hardly a question of the interest of Nequist in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to Nequist of a delay. To require Nequist to wait for the result of the related criminal action "would increase the danger of prejudice resulting from the loss of evidence, including the inability of witnesses to recall specific facts, or the possible death of a party." (*Clinton v. Jones* (1997) 520 U.S. 681, 707-708 [117 S.Ct. 1636, 1651, 137 L.Ed.2d 945].)

The second additional factor considered in *Keating* is the burden that any particular aspect of the proceedings may impose on the defendants. Avant's claimed burden in this regard is the implications that the denial of the requested stay will have on the privilege against self-incrimination that its employees, who are also defendants in the related criminal action, enjoy. However, the privilege being personal to the individual criminal defendants, the claimed threatened infringement on that privilege cannot be a burden to Avant, except only to the extent that its employees' assertion of the privilege may affect Avant's ability to respond truthfully to the requests for admission and interrogatory. This burden is however diminished by the trial court's order limiting the definition of "you" to Avant only, thereby excluding its employees. It is further diminished, if not eliminated, by the order of the court requiring Avant to provide "non-privileged information in the custody and control of its officers, employees and agents."

Moreover, under *Kordel*, Avant is to " 'appoint an agent who could, without fear of self-incrimination, furnish such requested information as was

available to the corporation.' " (*United States v. Kordel, supra*, 397 U.S. at p. 8 [90 S.Ct. at p. 767].) Even if Avant had no such agent, Avant is not without a remedy. We must presume the trial court will know how to address the situation when the situation presents itself. But we will not second-guess the trial court and say that Avant cannot be compelled to respond to the requests for admission and interrogatory because it has no *Kordel* agent who can answer the questions in its behalf without implicating that agent's Fifth Amendment rights.

There are ways by which a trial court may compel discovery disclosures by a corporate defendant while at the same time protecting the Fifth Amendment rights of its employees. In *City of Chicago v. Reliable Truck Parts Co., Inc.* (N.D.Ill. 1991) 768 F.Supp. 642, for example, the defendant corporation appointed an outsider to act as its agent for discovery purposes. The outsider agent prepared for the deposition by reviewing the corporation's books, tax returns, financial statements, invoices, suborders, and employee lists, and conferring with counsel. (*Id.* at p. 644.)

The third additional factor discussed in *Keating* is the convenience of the court in the management of its cases and the efficient use of judicial resources. Clearly, denial of the stay motion promotes the convenience of the court in the management of its cases. As stated in *U.S. v. Private Sanitation Industry Ass'n* (E.D.N.Y. 1992) 811 F.Supp. 802, 808: "[C]onvenience of the courts is best served when motions to stay proceedings are discouraged."

The fourth additional factor recognized in *Keating* is the interests of persons not parties to the civil litigation. The denial of Avant's motion to stay does not preclude Avant's employees who are not parties to the civil action from raising their Fifth Amendment rights at the proper time. In fact, the court had made sure not to implicate the individual defendants' Fifth Amendment privilege by ordering the limitation of the definition of "you" to Avant alone and directing Avant to provide "non-privileged information in the custody and control of its officers, employees, and agents." We therefore fail to see how the interests of nonparties can be implicated by the denial of Avant's stay motion.

The fifth and final factor considered in *Keating* is the interest of the public in the pending civil and criminal actions. The present civil action for defamation, intentional infliction of emotional distress, negligent and intentional interference with economic advantage, abuse of process, and unfair competition and business practices is an exercise by Nequist of his constitutionally protected right to come to court and be heard. The apparent

purpose of the action is to vindicate Nequist's good name and reputation and seek recompense for damages suffered. Clearly, the public has a significant interest in a system that encourages individuals to come to court for the settlement of their disputes.

We conclude the trial court did not exceed the bounds of reason, and therefore did not abuse its discretion, in denying Avant's motion to stay proceedings or to stay discovery.

### DISPOSITION

The petition for a writ of mandate is denied. All previous orders of this court staying discovery are vacated. Costs on appeal are awarded to the real party in interest.

Cottle, P. J., and Elia, J., concurred.