Filed 2/3/21  Rex v. Pelegrin CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| ANNE REX, | B297291 |
| Plaintiff and Appellant, | Los Angeles County Super. Ct. No. BC615555 |
| v. | |
| LAURA ANN PELEGRIN, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Anthony Mohr, Judge.  Affirmed.

Cliff Dean Schneider for Plaintiff and Appellant.

Slaughter, Reagan & Cole, William M. Slaughter, Jonathan D. Marshall and Gabriele M. Lashly for Defendant and Respondent.

Plaintiff Anne Rex sued defendant Laura Ann Pelegrin, asserting contract and malicious prosecution claims stemming from economic disputes that arose after the parties ended their romantic relationship. The claims were tried to the court, which rendered a judgment in favor of Pelegrin under Code of Civil Procedure section 631.8.[1] Rex appeals the judgment. She argues the trial court erroneously excluded a witness's testimony and made excessive sua sponte objections. Rex fails to demonstrate prejudicial error. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

Consistent with our standard of review, we state the facts in the light most favorable to the judgment, indulging all presumptions and drawing all reasonable inferences in its favor. (*Tusher v. Gabrielsen* (1998) 68 Cal.App.4th 131, 140 (*Tusher*).)[2]

Rex and Pelegrin began a romantic relationship in 1987, interrupted by several separations.

---

[1] Statutory references are to the Code of Civil Procedure, unless otherwise designated. Section 631.8 authorizes the trial court, as trier of the facts in a bench trial, to weigh the evidence and render a judgment for the moving party after the other party has completed its presentation of the evidence.

[2] Rex did not request a statement of decision as required under sections 631.8 and 632. We are therefore bound by the doctrine of implied findings to presume the trial court made all factual findings necessary to support the judgment. The only issue, as relates to the facts, is whether substantial evidence supports those findings. (*Tusher, supra,* 68 Cal.App.4th at p. 140; *Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 267.)

In 1995, Pelegrin purchased a house on Hillcroft Road in Glendale, California (the Hillcroft House).

On December 20, 1995, Rex and Pelegrin executed a Cohabitation Agreement for "the following reasons and with reference to the following facts:

"WHEREAS, the parties to this Agreement are now persuaded to enter into the relationship of life partners by their love and affection for one another and their desire to live together in a state of mutual harmony; and

"WHEREAS, the parties to this Agreement, in the interests of mutual understanding, intend and desire to define their respective rights in the property of the other, and to avoid such interests which, except for the operation of this agreement, they might acquire in the property of the other as incidents of their relationship; and

"WHEREAS, the parties desire that all property owned by either of them and additional property of whatsoever nature and wheresoever located which comes to either of them from any source during their relationship shall be and remain their respective separate property; and

"WHEREAS, the parties are purchasing together a single family residence located at [the Hillcroft House's address]."

Regarding the Hillcroft House, the Cohabitation Agreement provides "the parties shall own [it] together as joint tenants" and

establish a "joint bank account" for household expenses and mortgage payments. Apart from this joint account, the parties agreed they would "each maintain separate individual accounts."

The Cohabitation Agreement contains reciprocal covenants protecting the parties' separate property interests. The covenant protecting Pelegrin's property, which is mirrored in a separate covenant protecting Rex's property, states: "Rex covenants and agrees that all property now owned by Pelegrin of whatsoever nature and wheresoever located and any property which she may hereafter acquire, whether real, personal or mixed, and all earnings, salaries, commissions or income resulting from her personal services, skills and efforts shall be and remain her sole and separate property to use and dispose of as she sees fit."

In April 2002, Pelegrin purchased a house on Caleb Street in Glendale, California (the Caleb House). Pelegrin took title to the property in her name alone, as reflected in a recorded deed listing sole ownership by "LAURA PELEGRIN, a Single Woman."

The same year, Rex and Pelegrin ended their romantic relationship and sold the Hillcroft House.

In 2005, Rex and Pelegrin rekindled their relationship, and decided Rex would sell her home and move into the Caleb House with Pelegrin. Before selling her home, Rex emailed an attorney whose office had prepared the Cohabitation Agreement to consult the attorney about "necessary documents that a simple marriage certificate would cover." In her email, Rex noted "we never altered any of the original documents you filed for us in 1995." The attorney replied, "I expect that the cohabitation agreement I did for you in '95 is still good, since you never revoked it."

In September 2014, Rex and Pelegrin met with a therapist to discuss their deteriorating relationship. At the therapist's

4

suggestion, the parties agreed Rex would pay a "small amount of rent" to Pelegrin in October, November, and December 2014 for her tenancy in the Caleb House, and, at the end of the year, Rex would move out. Rex made the rent payments, but when she did not vacate the property in December 2014, Pelegrin raised her rent to $1,200 per month. Rex paid the January 2015 rent, but failed to make any further rent payments.

In May 2015, Pelegrin served Rex with a three-day notice to quit or pay rent. When Rex refused to pay or to move out, Pelegrin initiated unlawful detainer proceedings. In July 2015, the unlawful detainer court ruled against Pelegrin, finding there was "weak or inconsistent testimony on the existence of a lease or rental agreement between the parties," including whether "there was an agreement to lease only a portion of the premises or the entire home." Thus, the court held Pelegrin could not prevail on a three-day notice to pay rent or quit, but observed she could "proceed on a 60-day notice to quit without necessarily addressing whether it is based on an invitee tenant or other status."

Pelegrin filed a second unlawful detainer action based on a 60-day notice. In August 2015, before the action could go to trial, Rex moved out.

On March 30, 2016, Rex filed this action against Pelegrin. Her operative complaint asserts claims for (1) breach of pooling agreement; (2) breach of express contract; (3) breach of implied in fact contract; (4) quiet title; and (5) wrongful use of civil proceedings. The first and second causes of action were based on an alleged "oral agreement" between Rex and Pelegrin to treat their earnings and all acquired property as "joint property" following the rekindling of their relationship in March 2005.

5

The third cause of action was based on an alleged "implied understanding" that Rex would devote her skills and efforts to "maintaining REX and PELEGRIN's relationship," in exchange for which Pelegrin would "provide financial security, aid and assistance to REX and divide the financial estate owned by the parties." The fourth cause of action alleged "the parties considered themselves to be equal owners of the Caleb Street property, regardless of how title was held, as a result of the labor and monetary contributions made to the property by REX." And the fifth cause of action alleged Pelegrin filed the first unlawful detainer action without "reasonable grounds" and "for a purpose other than succeeding on the merits of the claim."

In March 2019, Rex, representing herself in propria persona, tried her claims to the court. After Rex concluded her presentation of evidence, Pelegrin moved for judgment under section 631.8.

The trial court granted judgment for Pelegrin. With respect to the contract claims, the court found there was little or no evidence of a pooling agreement, express oral contract, or an implied contract. And the court concluded the Cohabitation Agreement proved, contrary to Rex's claims, the parties had agreed to keep their respective assets separate, including all property acquired after execution of the agreement. The court also found title to the property was solely held in Pelegrin's name and there was no clear and convincing evidence that Rex had any interest in the property. As for the wrongful use of civil process claim, the court found evidence of Rex writing Pelegrin rent checks disproved the allegation that Pelegrin initiated the unlawful detainer action without probable cause, and, in any event, there was no evidence of malice "at all."

6

On March 27, 2019, the court entered judgment in favor of Pelegrin. Rex did not request a statement of decision. She filed a timely notice of appeal from the judgment.

**DISCUSSION**

Rex challenges the judgment on two grounds. First, she contends the trial court erred when it excluded the testimony of one of Rex's witnesses, Kelli Benson, as cumulative under Evidence Code section 352. Second, she argues the court "excessively sustained its own sua sponte objections" to Rex's examination of witnesses. Rex has not established prejudicial error on either ground.

1.    ***Rex Fails to Establish Benson's Testimony Would Have Produced a More Favorable Outcome***

Evidence Code section 352 grants the trial court discretion to exclude evidence if its probative value is substantially outweighed by the probability that its admission will necessitate undue consumption of time. This discretion extends to the exclusion of cumulative evidence. (*Horn v. General Motors Corp.* (1976) 17 Cal.3d 359, 371 (*Horn*), citing Evid. Code, § 352.) We review the court's decision to exclude cumulative evidence for an abuse of discretion. (*Nevarez v. Tonna* (2014) 227 Cal.App.4th 774, 785; *Avant! Corp. v. Superior Court* (2000) 79 Cal.App.4th 876, 881 ["Abuse of discretion is a deferential standard of review."].)

Even when a trial court errs, we may reverse its judgment only if the error resulted in a miscarriage of justice. (Cal. Const., art. VI, § 13 ["No judgment shall be set aside, or new trial granted, . . . unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."];

7

Code Civ. Proc., § 475; *Colaco v. Cavotec SA* (2018) 25 Cal.App.5th 1172, 1196–1197.) " '[A] "miscarriage of justice" should be declared only when the court, "after an examination of the entire cause, including the evidence," is of the "opinion" that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' " (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800 (*Cassim*).)

Before trial, Rex filed a witness list with a brief description of each witness's proposed testimony. One of those witnesses was Kelli Benson, a family friend whose proposed testimony included "the work Rex performed on the Caleb home," "Pelegrin's constant badgering demanding rent from Rex," and "Pelegrin's egregious treatment/harassment" of Rex. The list had other witnesses as well, such as Rex's sister, Nancy Rex, and two other family friends, Julie Alvarez and Michelle Bentcliff, whose proposed testimony included the same matters.

At the end of the third day of trial, after Nancy Rex, Alvarez, and Bentcliff had all testified, Rex indicated she intended to call Benson the next morning. According to Rex's offer of proof, Benson would testify Rex and Pelegrin called each other wife and spouse, Rex made upgrades to the Caleb House, and Rex and Pelegrin had been cohabitating. The trial court determined Benson's proposed testimony was cumulative and excluded it, subject to Rex making a written offer of proof showing Benson could testify to other matters. Rex did not make a written offer.

Rex argues the evidentiary ruling was an abuse of discretion. Citing the proposed testimony described in her witness list (not her oral offer of proof to the trial court), Rex

8

emphasizes Benson was "expected to testify to 'Pelegrin's constant badgering demanding rent from Rex,' " and Rex maintains this testimony was relevant to her cause of action for wrongful use of civil proceedings. Specifically, Rex argues Benson's testimony would have proved "Pelegrin had no probable cause to believe there was . . . a landlord-tenant relationship between Rex and Pelegrin[,] despite the fact that [Rex] had written rent checks."

Critically, Rex does not dispute that Benson's proposed testimony was cumulative. Indeed, in her opening brief, Rex acknowledges she herself "testified that Pelegrin had consistently demanded rent and that [Rex] only wrote th[o]se checks because her family told her to." The record shows Nancy Rex likewise testified that Pelegrin had demanded rent checks from Rex. This alone is sufficient to conclude the trial court reasonably exercised its discretion under Evidence Code section 352. (*Horn, supra,* 17 Cal.3d at p. 371 [" '[T]he exclusion of evidence which has only a cumulative effect will not justify reversal on appeal.' "]; *People ex rel. Department of Public Works v. Donovan* (1962) 57 Cal.2d 346, 357 [where additional evidence is "merely cumulative," "there is no abuse of discretion in disallowing it"]; *Pauly v. King* (1955) 44 Cal.2d 649, 661 [same].)

Rex also fails to demonstrate the admission of Benson's proposed testimony would have produced a more favorable result. As the trial court recognized, and Rex acknowledges in her opening brief, Rex's "wrongful use of civil proceedings" cause of action was in essence a malicious prosecution claim. To prevail on this claim, Rex had to prove Pelegrin's unlawful detainer action "(1) was commenced by or at the direction of [Pelegrin] and was pursued to a legal termination in [Rex's] favor [citations];

9

(2) was brought without probable cause [citations]; and (3) was initiated with malice [citations]." (*Bertero v. National General Corp.* (1974) 13 Cal.3d 43, 50.) After examining the entire record, we cannot say it is reasonably probable that Benson's testimony would have had any tangible effect on the trial court's reasons for rejecting this claim. (See *Cassim, supra,* 33 Cal.4th at p. 800.)

The trial court found Rex's evidence—that Rex wrote rent checks because Pelegrin demanded rent—failed to prove Pelegrin lacked probable cause to bring the unlawful detainer action. Rex argues Benson's testimony would have shown Pelegrin was "constantly badgering Rex for rent," which, combined with "Rex's testimony that she only wrote rent checks because her family told her to pay rent to ease tension," would have proved "Pelegrin did not have probable cause to believe there was a landlord-tenant relationship." We disagree.

In resolving the question of probable cause, the trial court correctly focused on what *Pelegrin*—not Rex—reasonably believed about the landlord-tenant relationship when she instituted the unlawful detainer action. (See *Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 878 ["[T]he probable cause element calls on the trial court to make an objective determination of the 'reasonableness' of the defendant's conduct, i.e., to determine whether, on the basis of the facts known to the defendant, the institution of the prior action was legally tenable."].) Regardless of *Rex's* reasons for writing the rent checks, the evidence showed Rex stayed in Pelegrin's home, paid Pelegrin rent, and did not vacate the property when Pelegrin asked. Pelegrin testified Rex agreed to pay rent in September 2014, and the evidence showed Rex did in fact pay rent for October, November, and December 2014, as well as January 2015. Although the unlawful detainer

10

court determined Pelegrin did not meet her burden of proof, the court did not indicate she lacked reasonable grounds to believe in the merits of her action. On the contrary, the court suggested Pelegrin could proceed with an eviction on a 60-day notice. After Pelegrin issued a 60-day notice and initiated a second unlawful detainer action, Rex moved out. In view of this record, we cannot say it is reasonably probable that Benson's cumulative testimony about Pelegrin "badgering" Rex for rent would have changed the trial court's resolution of the probable cause issue.

**2.** ***Rex Fails to Demonstrate the Trial Court's Sua Sponte Objections Were Erroneous or Prejudicial***

Rex contends the trial court "excessively made sua sponte objections" during her witness examinations. However, she does not argue any of the objections lacked merit, nor does she demonstrate how they prejudiced the outcome of the trial. Absent prejudicial error, no judgment may be reversed on appeal. (See Cal. Const., art. VI, § 13; see also Code Civ. Proc., § 475.)

The trial court has broad authority and a statutory duty to control trial proceedings, including the introduction and exclusion of evidence. (Evid. Code, §§ 320, 352.) Evidence Code section 765, subdivision (a) directs the trial court to "exercise reasonable control over the mode of interrogation of a witness so as to make interrogation as rapid, as distinct, and as effective for the ascertainment of the truth, as may be, and to protect the witness from undue harassment or embarrassment." Because the trial court has the power and the duty to exclude inadmissible, cumulative, or unduly prejudicial evidence, "[i]t is well established that where questions are asked which are improper, the court acts within the scope of its duty in refusing to

allow them to be answered, even though no objection [is] made."
(*People v. White* (1954) 43 Cal.2d 740, 747; see also *San Lorenzo Valley Community Advocates for Responsible Education v. San Lorenzo Valley Unified School Dist.* (2006) 139 Cal.App.4th 1356, 1420.)  It is only when the court abuses this discretion " 'in such manner as to prevent a full and fair opportunity to the parties to *present all competent, relevant, and material evidence* bearing upon any issue properly presented for determination' " that reversal is warranted.  (*Elkins v. Superior Court* (2007) 41 Cal.4th 1337, 1357 (*Elkins*).)

Rex broadly complains the trial court made at least five sua sponte objections during Alvarez's examination, at least seven objections during Karaffa's examination, and at least 11 objections during her examination of Pelegrin.  But Rex does not argue the court's objections were without merit, nor does she contend they deprived her of a full and fair opportunity to present all competent, relevant, and material evidence bearing upon her claims.  Instead, Rex maintains the court's "sua sponte objections, whether correct or not, abused the trial court's discretion by appearing biased against Rex."  The contention has no merit.

We have independently reviewed the record and are satisfied the trial court even-handedly enforced the rules of evidence without depriving either party of a fair hearing.  (See *Elkins, supra,* 41 Cal.4th at p. 1357.)  The trial court has a duty to ensure both a fair hearing and to avoid the appearance of being allied with one party over another.  (See, e.g., *People v. Sturm* (2006) 37 Cal.4th 1218, 1242.)  However, a numerical disparity between sua sponte interventions by a trial court does not on its own constitute misconduct.  (See *id.* at pp. 1241–1242.)

This is especially true in a bench trial, where there is no concern that the trial judge's intervention will lend credibility to or cast doubt on one side or the other. (Cf. *id.* at p. 1237 ["Trial judges 'should be exceedingly discreet in what they say and do in the presence of a jury lest they seem to lean toward or lend their influence to one side or the other.' "].) When we review the trial court's sua sponte objections, either separately or together, we find nothing to create the impression the court was allying itself with Pelegrin, and "we perceive nothing that crossed the line into improper behavior." (*People v. Carpenter* (1997) 15 Cal.4th 312, 353, superseded by statute on another ground as noted in *Verdin v. Superior Court* (2008) 43 Cal.4th 1096, 1106.)[3]

## DISPOSITION

The judgment is affirmed. Defendant Laura Ann Pelegrin is entitled to costs.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EGERTON, J.

We concur:

LAVIN, Acting P. J.                    DHANIDINA, J.

---

[3] Pelegrin invites us sua sponte to impose sanctions against Rex and her attorney for pursuing a frivolous appeal. (§ 907.) We decline to do so.