Filed 7/9/25  Vulich v. Vulich CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIFTH APPELLATE DISTRICT

| | |
|---|---|
| SHARON VULICH, Individually and as Successor Trustee, etc., et al., | F088070 |
| Plaintiffs and Respondents, | (Super. Ct. No. 20CECG03175) |
| v. | |
| NORMAN VULICH, | **OPINION** |
| Defendant and Appellant. | |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  D. Tyler Tharpe, Judge.

Daniel L. Harralson Law Office, Daniel L. Harralson for Defendant and Appellant.

Miles, Sears & Eanni, Lyndsie N. Russell for Plaintiffs and Respondents.

-ooOoo-

Norman Vulich shot and killed his brother Jerry Vulich.  Jerry's survivors sued Norman and prevailed in a jury trial.  Norman appeals arguing the trial court abused its discretion in denying motions to continue the trial.  We affirm.

## BACKGROUND

One day on the family farm, Norman shot and killed his brother Jerry. Law enforcement promptly arrested Norman. The Fresno County District Attorney filed criminal charges against Norman.[1]

Meanwhile, Jerry's survivors sued Norman in this civil case for wrongful death. The matter proceeded to trial nearly three years later.[2]

In the interim, Norman was represented by three separate counsel. Norman's second counsel took over the case in May 2022. About one year later, that counsel moved to withdraw citing an "ill[ness]" and inability "to practice law." Norman's third and final trial counsel substituted in in July 2023.[3]

New counsel quickly moved to continue the trial scheduled to begin on August 7, 2023. Counsel also sought to reopen discovery. Jerry's survivors opposed, specifically claiming "there [was] no good cause for a continuance or the reopening of discovery."

The trial court granted the continuance, setting a trial date of March 4, 2024. The request to reopen discovery was denied without prejudice.[4]

At the end of February 2024, Norman's trial counsel moved to stay or continue the upcoming trial. Counsel claimed he began to doubt Norman's cognitive ability in late December, about two months earlier. Counsel noted he was "awaiting receipt of an opinion from a medical professional" regarding Norman's "mental capacity." He also cited an inability for Norman "to testify due to the pending criminal case which will force

---

[1] The criminal matter is ongoing and largely immaterial to this case.

[2] The timeframe is measured from the last amended complaint to jury empanelment.

[3] Prior counsel's motion to withdraw was granted on June 15, 2023.

[4] The ruling is contained in a one page minute order. The matter was "argued and submitted" but not reported.

2.

him to invoke his Fifth Amendment privilege[.]" In sum, he suggested that "[i]f [Norman was] unable to assist … counsel … then he [would] be denied his rights to a fair hearing."

The survivors opposed a continuance, noting Norman's mental competence was already resolved in criminal court where "[h]e was deemed fit to stand trial."[5] The contested request proceeded to hearing.

Norman's counsel asserted, in addition to the competence and privilege points, "judicial economy" favored trying the case "in criminal court." He lamented prior counsel did little to represent Norman "for a good part of a year and a half[.]" Jerry's survivors feared further delay would jeopardize any ability to collect on a potential judgment; although financial investigation revealed a prospect of recovery, that prospect dwindled by the day.

The trial court noted prior counsel's failure to "do anything [was]n't unique to this case," citing "30 years" of apparent personal knowledge and labeling him as a "continuance champion[.]" The court believed it heard "a lot of excuses but not a lot of good cause." It subsequently denied the request and confirmed the March 4 trial date.

Undeterred, Norman's counsel again moved to continue the trial. This time the request was based on an inability to serve subpoenas on allegedly material witnesses. Counsel described issuing subpoenas one week prior to the trial date. All told, six witnesses—all law enforcement—were not available. Counsel stated the witnesses' involvement in the case. For example, one witness "was present during many key … interviews[.]"[6] Another "was … involved in interviewing" Norman,[7] and another

---

[5] Technically, the criminal court found "insufficient evidence" to doubt Norman's competence due to willful refusal to meet with a doctor.

[6] This witness appeared at the trial.

[7] This witness appeared at the trial.

"accumulated much of the evidence." The survivors again opposed, citing a lack of "good cause" and a failure to "properly disclose[]" the witnesses prior to trial.

The trial court denied the motion "for five reasons." One, counsel was dilatory in requesting the continuance. Two, counsel was not diligent "in preparing the matter for trial[.]" Three, counsel did "not demonstrate[] the materiality of any of the suggested six witnesses." Four, counsel failed to ever subpoena the witnesses "despite two trial dates having come and gone and the current trial date having been known for about seven months." Five, the witnesses were not disclosed "in trial readiness disclosures," making it "unlikely they would be allowed to testify even if they were subpoenaed."

As noted, the matter proceeded to trial as scheduled. The jury found in the survivors' favor, awarding them a combined nearly $2,800,000, plus costs and interest.

## DISCUSSION

At issue are the two denied motions to continue the trial. Norman argues "the judgment should be reversed and remanded due to [him] being denied his requests to continue the trial[.]" Jerry's survivors contend Norman "failed to establish that the trial court abused its discretion[.]"

We need not address whether the trial court abused its discretion.[8] We affirm because Norman has failed to allege, let alone demonstrate, any prejudice.

"[U]nder article VI, section 13 of the California Constitution, '[a] judgment may not be reversed on appeal ... unless "after an examination of the entire cause, including the evidence," it appears the error caused a "miscarriage of justice." ' [Citation.] The

---

[8] We will note the trial court's potential reliance on facts outside the record, i.e., its personal observations of prior counsel throughout the years, might constitute an abuse of discretion *if* it truly relied on those facts rather than ruling solely on the record before the court. It is unclear, however, how influential, if at all, the court's personal observations outside the record were to its ruling, and Norman's counsel certainly sought no clarity. We cannot conclude, based on this record, that there was shown any abuse of discretion by the trial court.

4.

constitutional constraint, which applies in civil as well as criminal cases, 'generally "prohibits a reviewing court from setting aside a judgment due to trial court error unless it finds the error prejudicial." ' [Citation.] This means that a litigant that might have been able to establish error on interlocutory writ review, and thus secure a writ compelling the trial court to conduct proceedings differently, typically will not be able to secure relief on direct review of the court's judgment without demonstrating *both* error in the conduct of proceedings *and* 'prejudice occasioned by the error.' " (*TriCoast Builders, Inc. v. Fonnegra* (2024) 15 Cal.5th 766, 786; *Freeman v. Sullivant* (2011) 192 Cal.App.4th 523, 527-528 ["any error in failing to grant a request for a continuance—whether mandatory or discretionary—is reversible only if it is tantamount to the denial of a fair hearing."].)[9]

At best, Norman raises the specter of his "mental capacity" and "the impact it had on his … ability to assist … in the case." No evidence supports an inference, let alone proves, an impact on the case's outcome. There exists no offer of proof anywhere in the record.[10] For example, counsel asserted a continuance was necessary because he was "awaiting receipt of an opinion from a medical professional" regarding Norman's mental capacity. No such report is in the record.[11]

The only other salient claim raised is "the impact of [the] criminal case on [Norman's] ability to testify at the civil trial[.]" But "the fact that a man [or woman] is indicted cannot give him [or her] a blank check to block all civil litigation on the same or related underlying subject matter. Justice is meted out in both civil and criminal

---

[9] Norman has not alleged any facts suggesting a constitutionally defective trial, and we discern none on our own review.

[10] We note Norman, in the same timeframe he is claiming mental incapacity, executed at least one declaration and a personal waiver of his attendance at the trial.

[11] The notice of appeal was filed more than two months after the final continuance request was denied. There was no posttrial litigation.

litigation." (*Avant! Corp. v. Superior Court* (2000) 79 Cal.App.4th 876, 882.)  More importantly, again, no prejudice is demonstrated.

Finally, as to the unavailable witnesses, Norman never clearly states why those witnesses were necessary or material.  Rather, he, both in the trial court and on appeal, simply incants their materiality because they were involved in the case.  His incantations do not demonstrate prejudice.

## **DISPOSITION**

The judgment is affirmed.  Appellate costs are awarded to Respondents.



SNAUFFER, J.

WE CONCUR:


PEÑA, Acting P. J.


DE SANTOS, J.

6.